[Civ. No. 35371. First Dist., Div. Two. Apr. 12, 1976.]

ROBERT BROWN, Plaintiff and Appellant, v.
CITY OF BERKELEY et al., Defendants and Respondents.

## COUNSEL

Carroll, Burdick & McDonough and Christopher D. Burdick for Plaintiff and Appellant.

Donald P. McCullum and Lois L. Johnson, City Attorneys, Michael Lawson, Deputy City Attorney, Susan Watkins and Dennis Lee, Associate Attorneys, Theodore R. Lakey and Charles O. Triebel, Jr., for Defendants and Respondents.

## OPINION

**BRAY, J.***—Appellant Robert Brown appeals from a judgment of the Alameda County Superior Court declaring the invalidity in part of an initiative ordinance adopted by the voters of the City of Berkeley to establish a police review commission (hereinafter "Commission").

### ISSUE PRESENTED

The ordinance conflicts with the city charter.

### RECORD

Plaintiff Robert Brown, a Berkeley resident and taxpayer, filed a complaint for injunctive and declaratory relief against the City of

*Retired Presiding Justice of the Court of Appeal sitting under assignment by the Chairman of the Judicial Council.

Berkeley and certain of its officials seeking relief as follows: (1) upon the first, second and third causes of action, injunctive relief against the city council from appointing anyone to serve on the Commission, and restraining those commissioners already appointed from exercising any power; (2) upon the fourth cause of action, injunctive relief against the city auditor, restraining her from paying any salary, fee, expense or emolument to any commissioner; and (3) upon the fifth cause of action, a declaration that the Commission was not a lawful or proper city Commission and therefore could exercise no powers under the purported initiative ordinance.

An order to show cause was issued and served upon the defendants. Defendants appeared by way of demurrer and thereafter the case was heard by the court sitting without a jury. The parties stipulated that the facts were not in dispute and that the case could be submitted and decided upon the basis of the pleadings, documents, exhibits and memoranda in the file. Subsequently the court issued its memorandum of intended decision rejecting all of plaintiff's contentions with the single exception that the court determined that section 10(d)(ii) of the ordinance was invalid in its attempt to prohibit the Berkeley Police Department from conducting its own internal investigations of complaints made against its employees. Judgment was entered denying plaintiff all relief, with the exception noted above, and plaintiff appeals from that judgment.

FACTS

The therein stated purpose of the initiative ordinance is to provide for community participation in setting and reviewing police department policies, practices and procedures, and to provide a means for prompt and impartial investigation of complaints made against the police department. (Ord., § 1.) The nine Commission members are appointed by the city council. (Ord., § 2.) It is the Commission's duty to review and make recommendations to the public, city council and city manager concerning all policies, practices and procedures in relation to the Berkeley Police Department, other law enforcement agencies, intelligence agencies, and military agencies operating within the city, and law enforcement generally. (Ord., § 10(a) and (b).) It is also the Commission's duty to receive and investigate complaints directed against the police department or any of its personnel and make recommendations in connection therewith to the city council and city manager. (Ord., § 10(d).)

The ordinance vests the Commission with the following powers and rights pertinent to this appeal:

1. The power to require the chief of police, any other police department personnel and any other city official to attend meetings of the Commission (Ord., § 9);

2. The power to request and receive promptly written and unwritten information, documents and materials and assistance from any officer or employee of the city (Ord., § 10(c));

3. The power to request and receive cooperation and assistance of any city officer or employee, in the execution of Commission objectives (Ord., §§ 9, 10(c));

4. The power "to receive complaints directed against the Police Department and any of its officers and employees, and hear and completely investigate said complaints and make such recommendations and give such advice without limitation (including disciplinary action and action relating to departmental policies and procedures) to the city council and the city manager in connection therewith as the Commission in its discretion deems advisable; provided as follows:

"(i) that investigation of all complaints filed with the Commission shall begin immediately after complaints are filed and proceed as expeditiously as possible;

"(ii) [1] that all such complaints filed with other offices, boards, bureaus, and departments of the City, including the Police Department, shall be referred to the Commission for investigation and that the Police Department shall conduct its own investigation, only at the request of said Commission, and;

"(iii) that regular quarterly reports relating to the number, kind, and status of all such complaints shall be made by the Commission to the City Council and the City Manager" (Ord., § 10(d));

5. The power to exercise the power of subpoena, consistent with provisions of the Berkeley City Charter and to the extent permissible by law (Ord., § 10(e));

---

[1]Subsection ii was invalidated by the trial court.

6. The right as members of said Commission to receive as pay the sum of $3 per hour for all work performed for said Commission (not to exceed $200 per month) (Ord., § 6);

7. The power to require the office, staff, and employees of the city clerk to supply clerical and secretarial assistance to said Commission and to secure and define the duties of said secretarial and clerical assistance (Ord., § 6);

8. The power to appoint subcommittees of the Commission, to which said subcommittees the Commission may appoint persons who are not otherwise members of the Commission itself (Ord., § 7);

9. The power to review and make recommendations on policies, practices and procedures of the Berkeley Police Department relevant to the hiring and training of police officers and relevant to department priorities for policing and patrolling (Ord., § 10(b)).

*The ordinance in part conflicts with the city charter.*

█ Appellant contends that the ordinance is invalid because it conflicts with the city charter's grant of power to the city manager. Appellant asserts that a conflict exists because the ordinance purports to give the Commission the powers enumerated in the statement of facts *ante,* whereas appellant contends that the city charter specifically prohibits interference with the city manager's unfettered exercise of discretion in the following areas: (1) the appointment, discipline and removal of all city officials and employees, subject only to civil service provisions of the charter (see charter, art. VII, § 28(b)); (2) the exercise of control over all departments, divisions, and bureaus, and the officers and employees thereof (see charter, art. VII, § 28(c)); (3) the responsibility to recommend the compensation of all city officers and employees before the city council sets the level of compensation (see charter, art. VII, § 32); and (4) the giving of orders to subordinates of the city manager. (See charter, art. VII, § 28(b).)

To consider the problem presented it is necessary to set forth certain rules of construction applicable to charters, ordinances and the power of the city council. Ordinances are invalid if they conflict with the charter. (*Acton* v. *Henderson* (1957) 150 Cal.App.2d 1, 13 [309 P.2d 481].)

■ ". . . The charter of a municipality is its constitution. (*In re Pfahler,* 150 Cal. 71, 82 [88 Pac. 270, 11 Ann. Cas. 911, 11 L. R. A. (N. S.) 1092]; *Platt* v. *San Francisco,* 158 Cal. 74, 84 [110 Pac. 304].) ■ Any ordinance passed by a municipal corporation within the scope of the authority expressly conferred on it has the same force within its corporate limits as a statute passed by the Legislature has throughout the state. (*Ex parte Roach,* 104 Cal. 272 [37 Pac. 1044]; *Weisman* v. *Board of Building & Safety Commrs.,* 85 Cal.App. 493 [259 Pac. 768].) ■ To be valid, an ordinance must harmonize with the charter. (*South Pasadena* v. *Terminal Ry. Co.,* 109 Cal. 315 [41 Pac. 1093].) ■ An ordinance can no more change or limit the effect of the charter than a statute can modify or supersede a provision of the state Constitution. (McQuillin, Municipal Corporations, 2d ed., sec. 682.)" (*Marculescu* v. *City Planning Com.* (1935) 7 Cal.App.2d 371, 373-374 [46 P.2d 308].)

■ "Another important rule of construction was stated in *Glass* v. *City of Fresno,* 17 Cal.App.2d 555, 560 [62 P.2d 765], in the following language: 'Where ordinances or bylaws have been enacted pursuant to competent authority they will be supported by every reasonable intendment, and reasonable doubts as to their validity will be resolved in their favor. Courts are bound to uphold municipal ordinances and bylaws unless they manifestly transcend the powers of the enacting body.' " (*Acton, supra,* at p. 14.) ■ Additionally, it is well recognized that an ordinance proposed by the electors of a city under the initiative laws must constitute such legislation as the legislative body of the city is empowered to enact. (*Blotter* v. *Farrell* (1954) 42 Cal.2d 804, 811 [270 P.2d 481].)

Likewise, it is necessary to review the significant applicable sections of the city charter to determine whether there are conflicts between the ordinance and the charter. Article VII, section 27, of the charter reads: "The Council shall appoint an officer, who shall be known as the City Manager, who shall be the administrative head of the Municipal Government and who shall be responsible for the efficient administration of all departments."

Article VII, section 28, of the charter states the powers and duties of, the city manager: "The City Manager shall be responsible to the Council for the efficient administration of all the affairs of the City. He shall have the power, and it shall be his duty: . . .

"(b) Except as otherwise provided in this Charter, to appoint, discipline or remove all heads or directors of departments, chief officials, and all subordinate officers and employees of the City, subject to the Civil Service provisions of this Charter. Neither the Council nor any of its committees or members shall dictate or attempt to dictate, either directly or indirectly, the appointment of any person to office or employment by the City Manager or in any manner interfere with the City Manager or prevent him from exercising his own judgment in the appointment of officers and employees in the administrative service. Except for the purpose of inquiry, the Council and its members shall deal with the administrative service solely through the City Manager, and neither the Council nor any member thereof shall give orders to any of the subordinates of the City Manager, either publicly or privately.

"(c) To exercise control over all departments, divisions and bureaus of the City Government and over all the appointive officers and employees thereof."

Compensation of city officers and employees is covered by article VII, section 32, of the charter: "The Council shall also fix the compensation of all other officers and employees on recommendation of the City Manager, except as in this Charter otherwise provided."

Article IX, section 48, of the charter gives the city's voters the "power through the initiative and otherwise, as provided by this Charter and the general laws of the State, to enact appropriate legislation to carry out and enforce any of the above general powers of the City or any of the specified powers of the Council."

Article IX, section 49, of the charter enumerates the powers of the council, including the following: "As the legislative organ of the City, the Council, subject to the provisions and restrictions of this Charter, shall have power: . . .

"(5) . . . To organize and maintain police and fire departments, . . .

"(62) . . . To enact appropriate legislation and do and perform any and all other acts and things which may be necessary and proper to carry out the general powers of the City or any of the provisions of this Charter, and to exercise all powers not in conflict with the Constitution of the State, with this Charter or with ordinances adopted by the people of the City."

The power to organize and maintain the police department is specifically granted in the charter to the city council. (Charter, art. IX, § 49(5).) The words "organize and maintain" connote the power of the council to have an ongoing involvement in the formation of the policies, practices and procedures of the police department.[2] This clearly includes the power to investigate same and make pertinent recommendations. The fundamental nature of the ordinance is directly aimed at inquiring into and investigating the policies, practices and procedures of the police department. Under the charter sections, it is clearly within the council's power to inquire into said police department practices, procedures and policies and make recommendations concerning same.

However, as to intrusion into individual disciplinary proceedings of police department employees and officers, which the ordinance also attempts, such does conflict with the charter grant of powers to the city manager, as the trial court properly determined. Article VII, section 28(b), in the charter states in part that it is the city manager's power and duty, "Except as otherwise provided in this Charter, to appoint, discipline or remove all heads or directors of departments, chief officials, and all subordinate officers and employees of the City, . . . Neither the Council nor any of its committees or members shall dictate or attempt to dictate, either directly or indirectly, the appointment of any person to office or employment by the City Manager or in any manner interfere with the City Manager or prevent him from exercising his own judgment in the appointment of officers and employees in the administration service." This places the power to appoint, discipline, or remove police department officers and employees in the city manager, to the exclusion of any interference by the city council. Therefore, while it would appear that the Commission could properly hear and investigate complaints against specific police department officers and employees, it is beyond the council or Commission's power to recommend specific action and/or disciplinary action as to individuals. To do so would usurp the powers and functions of the city manager. The trial court properly declared invalid section 10(d)(ii) of the ordinance. That subsection is severable from the balance of the ordinance and does not render the rest of the ordinance invalid. Consistent with the above discussion, it is also necessary to strike from the beginning lines of section 10(d) the words "without limitation (including disciplinary action and action . . .)."

[2]Appellant does not raise the issue, and therefore it is not here considered, whether the city council has the power to delegate purely investigatory and advisory aspects of this power to a commission or a commission not composed of city council members.

■ Likewise, there is an irreconcilable conflict between the provisions of article VII, section 28(b) and (c) of the city charter and the second paragraph of section 6 of the ordinance.

That section of the charter provides, in part: "Except for the purpose of inquiry, the Council and its members shall deal with the administrative service solely through the City Manager, . . ."

Section 6 of the ordinance, on the other hand, vests the Commission with the power to require the office, staff, and employees of the city clerk to supply clerical and secretarial assistance to said Commission and to secure and define the duties of said secretarial and clerical assistants.

The quoted portion of the city charter provisions is most adamant in the requirement that the council and its members shall· deal with the administrative services *solely* through the city manager. It is equally clear that, under the provisions of section 6 of the ordinance, the Commission need not go through the city manager but may, instead, deal directly with the city clerk's personnel for administrative services. This irreconcilable conflict between the charter and the ordinance necessitates the striking of the second paragraph of section 6 from the ordinance.

■ Section 9 and section 10(c) of the ordinance also do violence to the mandate of the charter requirement that everything pertaining to administrative services go solely through the city manager.

Section 9 reads: "In carrying out its objectives, the Commission shall receive prompt and full cooperation and assistance from all departments, officers and officials of the City of Berkeley. The Chief of Police, or his deputy if the Chief is ill or absent from the City, shall as part of his duties attend meetings of the Commission when so requested by the Commission, and shall provide such information, documents, or materials as the Commission may request. The Commission may also require the attendance at its meetings of any other police department personnel or City officials it deems appropriate in the carrying out of its responsibilities under this ordinance."

Section 10(c) of the ordinance provides the Commission with the power "to request and receive promptly such written and unwritten information, documents and materials and assistance as it may deem necessary in carrying out any of its responsibilities under this ordinance

from any office or officer or department of the city government, including but not limited to the Police Department, the City Manager, the Finance Department, the Public Works Department, and the City Attorney, each and all of which are hereby directed as part of their duties to cooperate with and assist the Commission in the carrying out of its responsibilities; provided that, information the disclosure of which would impair the right of privacy of specific individuals or prejudice pending litigation concerning them shall not be required to be made available to the Commission except in general form to the extent police activities in specific cases reflect police department policies and, provided that, the individual involved in the specific situation may consent in writing to the disclosure of information concerning him or her; in which case it shall be made available to the Commission."

All of the above discussed portions of the ordinance which must be stricken are severable from the balance of the ordinance and, therefore, do not render the rest of the ordinance invalid.

 Appellant also contends that section 6 of the ordinance in setting compensation for each Commission member at $3 an hour, not to exceed $200 per month, conflicts with article VII, section 32, of the charter which provides that the council shall fix the compensation of officers and employees of the city "on recommendation of the City Manager." However, the parties agreed to the factual allegations at trial and those allegations included a declaration of Acting City Manager Paul Williamson that he recommended a budget for the Commission for fiscal year 1973-1974 which included compensation to be paid the Commission members. Such action would appear to harmonize any conflict between the compensation provisions of the charter and the ordinance.

 Appellant further asserts that the Commission's power to appoint subcommittees composed of persons who are not Commission members is an unlawful delegation of the Commission's powers. However, as stated in *California Sch. Employees Assn.* v. *Personnel Commission* (1970) 3 Cal.3d 139, 144 [89 Cal.Rptr. 620, 474 P.2d 436], a public agency or commission "may delegate the performance of ministerial tasks, including the investigation and determination of facts preliminary to agency action."

██ Appellant further argues that the ordinance conflicts with Government Code section 38630 which provides that "The police department of a city is under the control of the chief of police." However, this section does not apply to charter cities, but to general law cities. ██ "It has been uniformly held that the organization, maintenance and operation of a police and fire department by a chartered city is a municipal affair and as such not subject to the control of the legislature." (*Armas* v. *City of Oakland* (1933) 135 Cal.App. 411, 420 [27 P.2d 666, 28 P.2d 422].) ██ Moreover, under article XI, section 5(b), of the California Constitution chartered cities are specifically provided the authority to constitute, regulate and govern city police departments.

The subpoena powers given to the Commission by ordinance section 10(e) are also claimed by appellant to violate charter article V, section 20. That section reads in pertinent part: "every member of any board or commission provided for in this Charter, shall have the power . . . to issue subpoenas, . . ." As it is not argued by appellant that the council is restricted from creating commissions other than those expressly provided for under article IX, section 49, a commission created under the council's general legislative powers contained in article VIII, section 38, of the charter, or created under the council's additional powers contained in article IX, section 49(62), of the charter appears to be a "commission provided for in this Charter" within the meaning of article V, section 20, of the charter.

██ Likewise, appellant's contention that article V, section 20, of the charter is preempted by state law, to wit, Government Code section 37104 lacks merit. Government Code section 37104 only grants subpoena power to a city's legislative body, whereas Berkeley's City Charter additionally grants subpoena power to commissions provided for in the charter. However, charter cities are not subject to, or controlled by, provisions of the general law which conflict with provisions of their charter in respect to "municipal affairs." (*Cole* v. *City of Los Angeles* (1919) 180 Cal. 617, 622 [182 P. 436].) The subpoenaing of witnesses and documents concerning a matter pending before a city commission is a municipal affair, and therefore Government Code section 37104 does not control.

The judgment is hereby modified by striking from subdivision (d) of section 10 of the ordinance the following words: "without limitation (including disciplinary action and action . . .)," by striking the second

paragraph of section 6, by striking the entirety of section 9 and by striking the entire subdivision (c) of section 10. In all other respects the judgment is affirmed.

Taylor, P. J., and Rouse, J., concurred.

The petitions of all the parties for a hearing by the Supreme Court were denied June 9, 1976.