[Civ. No. 40772. First Dist., Div. Four. Dec. 21, 1977.]

BERKELEY POLICE ASSOCIATION et al.,
Plaintiffs and Appellants, v.
CITY OF BERKELEY et al., Defendants and Respondents;
JANE BOND MOORE et al., Interveners and Respondents.

## COUNSEL

Carroll, Burdick & McDonough and Elizabeth G. Leavy for Plaintiffs and Appellants.

Michael Lawson, City Attorney, and Charles O. Triebel, Jr., for Defendants and Respondents.

Amitai Schwartz, Charles C. Marson, Margaret C. Crosby and Alan L. Schlosser for Interveners and Respondents.

## OPINION

**EMERSON, J.**[*]—The City of Berkeley has established, by initiative ordinance, a citizens' police review commission, hereafter referred to as the commission. The function of the commission, and the purpose of the ordinance, is stated to be "to provide for community participation in setting and reviewing police department policies, practices, and procedures and to provide a means for prompt, impartial and fair investigation of complaints brought by individuals against the Berkeley Police Department."

The validity of the ordinance was upheld in *Brown* v. *City of Berkeley* (1976) 57 Cal.App.3d 223 [129 Cal.Rptr. 1], insofar as it established the commission and empowered it to investigate and make recommendations concerning the policies and practices of the department. The court, however, struck down certain provisions empowering the commission to intervene in disciplinary proceedings against police department employees and officers, as well as some other provisions not germane to the instant case.

The Berkeley Police Department has established its own procedures for reviewing citizen complaints against police officers. Such complaints are investigated by the department's internal affairs bureau. Bureau investigators take statements from complainants and from accused and witness officers, and prepare reports based thereon. These reports are reviewed by the department's board of review, which holds hearings at weekly intervals to determine what action should be taken concerning

---

[*]Retired judge of the superior court sitting under assignment by the Chairperson of the Judicial Council.

each complaint. Each member of the board is provided with a copy of the bureau report. The hearings consist almost entirely of a discussion of the contents of these reports and the information contained therein.

The police review commission is composed of nine citizen members who are appointed by the city council. Pursuant to its power to investigate complaints and make recommendations to the city council, the police review commission conducts "Trial Board" hearings. Such hearings are open to the public, in contrast to the hearings held by the department's board of review, which are not.

In June of 1976, respondent Pomeroy, the chief of police, announced his intention to (1) permit a member of the commission to sit in at department board of review hearings during which bureau reports are discussed, and (2) send a representative of the department to each police review commission trial board meeting. The representative would take with him a copy of any bureau reports that had been prepared concerning individuals who were being investigated by the police review commission and answer questions of commission members concerning the department's position on the complaints.

Appellant Berkeley Police Association is an employee organization representing members of the Berkeley Police Department. It, along with certain individual members thereof, filed the instant suit to enjoin the above described practices. Respondents and certain interveners filed general demurrers to the complaint. After a hearing, the court ordered that the demurrers be sustained without leave to amend. Judgment for respondents was subsequently entered. This appeal is from the judgment and order. Appellants raise the points discussed below.

*Did appellants state a cause of action for violation of the Meyers-Milias-Brown Act?*

■ Appellants claim that their petition stated a valid cause of action in that it was alleged that the department had established new policies regarding investigation of citizen complaints against police officers without having first met or conferred with appellant police association. Appellants assert this constituted a violation of the Meyers-Milias-Brown Act, specifically Government Code section 3505,[1] which provides in pertinent part: "The governing body of a public agency, or such boards,

---

[1] All statutory references are to the Government Code unless otherwise specified.

commissions, administrative officers or other representatives as may be properly designated by law or by such governing body, shall meet and confer in good faith regarding wages, hours, and other terms and conditions of employment with representatives of such recognized employee organizations, as defined in subdivision (b) of Section 3501, and shall consider fully such presentations as are made by the employee organization on behalf of its members prior to arriving at a determination of policy or course of action."

Accepting appellants' allegations of a failure to meet and confer as true for the purposes of the demurrer, it does not follow that the policies announced by Chief of Police Pomeroy constituted a change in "conditions of employment" contemplated by the Meyers-Milias-Brown Act. It has been established that the city's duty to "meet and confer in good faith" is confined to matters within the "scope of representation." (*International Assn. of Fire Fighters Union* v. *City of Pleasanton* (1976) 56 Cal.App.3d 959, 966 [129 Cal.Rptr. 68].) The scope of representation is defined in Government Code section 3504 as "all matters relating to employment conditions and employer-employee relations, including, but not limited to, wages, hours, and other terms and conditions of employment, *except, however, that the scope of representation shall not include consideration of the merits, necessity, or organization of any service or activity provided by law or executive order.*" (Italics added.)

The exception carved out in the italicized language was added by amendment in 1968. Our Supreme Court interpreted the Legislature's intent in providing for this exception as follows: "The origin and meaning of the second phrase—excepting 'merits, necessity or organization' from the scope of bargaining—cannot claim so rich a background. Apparently the Legislature included the limiting language not to restrict bargaining on matters directly affecting employees' legitimate interests in wages, hours and working conditions but rather to forestall any expansion of the language of 'wages, hours and working conditions' to include more general managerial policy decisions." (*Fire Fighters Union* v. *City of Vallejo* (1974) 12 Cal.3d 608, 616 [116 Cal.Rptr. 507, 526 P.2d 971].) The court went on to note that although the exception does not have an analogue in the National Labor Relations Act, federal cases interpreting the NLRA have forged a similar exception by restricting the scope of the term " 'wages, hours and terms and conditions of employment' " to exclude managerial decisions, out of an "underlying fear that . . . *wages, hours and working conditions could be expanded beyond reasonable boundaries to deprive an employer of his legitimate manage-

ment prerogatives. . . . As a review of federal case law in this field demonstrates, the trepidation that the union would extend its province into matters that should properly remain in the hands of employers has been incorporated into the interpretation of the scope of 'wages, hours and terms and conditions of employment.' " (*Id.*)

The policies announced by Chief Pomeroy consist of (1) allowing a member of the commission to sit in on department board of review hearings, and (2) sending a representative of the department to commission trial board meetings to answer questions of commission members concerning the department's position on individual complaints.

We conclude that these policies fall within the exception delineated in section 3504. Appellants are in fact challenging the merits or necessity of a "service or activity provided by . . . executive order," (§ 3504) i.e., the announced policies of their chief officer concerning a matter of police-community relations. These policies clearly constitute management level decisions which are not properly within the scope of union representation and collective bargaining. As pointed out by our Supreme Court, a distinct line of federal precedent has established substantive limitations upon the extent to which "working conditions" may be defined under the NLRA, so that decisions which are plainly within the realm of managerial discretion are excluded from the scope of union representation. (See *Fire Fighters Union* v. *City of Vallejo, supra,* 12 Cal.3d at pp. 616-617, fn. 8 and cases cited therein.) As stated in *N.L.R.B.* v. *Transmarine Navigation Corporation* (9th Cir. 1967) 380 F.2d 933: "A decision of such fundamental importance as to the basic direction of the corporate enterprise is not included within the area of mandatory collective bargaining." (*Id.,* at p. 939.) These considerations apply a fortiori where our Legislature has chosen to provide for an explicit statutory exception for management decisions and particularly in the case of public entities where both employers and employees are servants of the people. To require public officials to meet and confer with their employees regarding fundamental policy decisions such as those here presented, would place an intolerable burden upon fair and efficient administration of state and local government. Such decisions cannot and should not be within the "scope of representation" by public employee associations. Therefore, allegations that the city failed to meet and confer with appellants before instituting Chief Pomeroy's new policies, could not as a matter of law have established a violation of the "meet and confer" provisions of the Meyers-Milias-Brown Act.

But there is still further reason why the challenged policies did not constitute a change in the "terms and conditions" of appellants' employment. Berkeley Police Department Regulation PR 253 provides: "Employees shall not divulge to any person not connected with the department information acquired by his employment if the information might discredit or imperil the efficiency of the department, *unless required by law, departmental order, or order of a commanding officer.* Departmental records and reports shall be exhibited only in conformity with departmental orders." (Italics added.) Since disclosure of the allegedly "confidential" internal affairs bureau reports to individuals outside the department has always been authorized if ordered by a commanding officer, Chief Pomeroy's decision to disclose the contents of such reports to members of the police review commission is in full compliance with existing department rules and regulations. Appellants were working under these rules and conditions even prior to the challenged practices. Hence, the terms and conditions of appellants' employment have remained unchanged, notwithstanding Chief Pomeroy's announced new policies, and respondents had no obligation to meet and confer before implementing them.

*Did appellants state a cause of action based
upon the principle of equitable estoppel?*

In their complaint, appellants alleged that ". . . prior to June 24, 1976, the Department has represented to witness and accused officers that the information that they provide to the Internal Affairs Bureau investigator, and the Internal Affairs Bureau report which summarizes this information, would not be divulged to anyone outside of the Berkeley Police Department." The declaration of appellant Brown states that on June 21, 1976, he was interviewed by Officer Frank T. Bone, an internal affairs bureau investigator, who assured him that the information Brown disclosed to him would not be disseminated outside the department. Appellants now claim that the demurrer should not have been sustained because they had set forth a valid cause of action based upon the doctrine of equitable estoppel.

Among the elements essential to the application of the doctrine of equitable estoppel are the facts that the party asserting the estoppel must be ignorant of the true facts and that he must rely, to his injury, upon the conduct of the party to be estopped. (See 30 Cal.Jur.3d, Estoppel and Waiver, § 5, p. 702, and cases cited in fn. 49.) Concomitant with the latter element is the fact that the reliance must be reasonable. (*Calhoun* v.

*Huntington Park First Sav. & Loan Assn.* (1960) 186 Cal.App.2d 451, 461 [9 Cal.Rptr. 479].)

Appellants cannot claim ignorance of the fact that both police regulations and the Berkeley City Charter provide for authorized disclosure of police reports and records to persons outside the confines of the police department. Police regulation No. 253, quoted above, provides that employees shall not divulge to persons outside the department "information acquired by his employment" *unless* ordered to do so by departmental order or order of a commanding officer. Article VII, section 28(c) of the Berkeley City Charter confers the power on the city manager "To exercise control over all departments, divisions and bureaus of the City Government and over all the . . . employees thereof." (*Brown* v. *City of Berkeley, supra,* 57 Cal.App.3d at pp. 231-232.) This clearly includes the power to investigate complaints against police officers, as well as to discipline, or remove them. (*Id.,* at p. 233.) It necessarily follows that the city manager's authority includes complete access to the department's investigative files.

Further, appellants should reasonably have been aware that police records concerning the investigation of citizen complaints are subject to discovery (and hence disclosure) where good cause is shown in both criminal proceedings (*Pitchess* v. *Superior Court* (1974) 11 Cal.3d 531 [113 Cal.Rptr. 897, 522 P.2d 305]), and civil trials (*Shepherd* v. *Superior Court* (1976) 17 Cal.3d 107, 123-124 [130 Cal.Rptr. 257, 550 P.2d 161]).

From the foregoing, the conclusion is apparent that appellants had notice of facts sufficient to put reasonably prudent persons upon inquiry that information given to police investigators could not forever have been kept secret within the police department. Concomitantly, appellants' "reliance" on representations that their statements would always remain within the department cannot be said to have been reasonable. Thus, two of the elements necessary to invoke the doctrine of equitable estoppel are here lacking.

■ As an alternative ground for our conclusion, we note the well established principle that estoppel against a public entity may not be invoked where it "would result in the nullification of a strong rule of policy adopted for the benefit of the public." (*Strong* v. *County of Santa Cruz* (1975) 15 Cal.3d 720, 725 [125 Cal.Rptr. 896, 543 P.2d 264]; *City of Long Beach* v. *Mansell* (1970) 3 Cal.3d 462, 493 [91 Cal.Rptr. 23, 476 P.2d 423].)

As noted previously, both Berkeley Police Department regulations and the city charter limit the power of department officials to keep confidential investigative records exclusively within the department. (PR 253; charter, art. VII, § 28(b).) Furthermore, since under the city charter the police department is subordinate to the supervision and control of the city council and city manager (*Brown, supra,* 57 Cal.App.3d at p. 233), allowing the doctrine of estoppel to be used to prevent release of department information outside the department itself would endow the police department with greater powers than are granted it under the city charter. Finally, in light of the city's announced policies of closer cooperation between the police review commission and the department, permitting the doctrine to bar implementation of the new procedures would "effectively nullify 'a strong rule of policy, adopted for the benefit of the public, . . .' " (*City of Long Beach* v. *Mansell, supra,* 3 Cal.3d at p. 493) namely, the decision of public officials in the delicate area of police-community relations. We therefore conclude that under the circumstances here presented, appellants may not properly invoke the doctrine of equitable estoppel to prevent effectuation of the practices and procedures announced by Chief Pomeroy.

Appellants' reliance on *City & County of S. F.* v. *Superior Court* (1951) 38 Cal.2d 156 [238 P.2d 581], does not avail them. The opinion of the court there did not rely upon the theory of estoppel, but instead upon former section 1881, subdivision (5) of the Code of Civil Procedure (now repealed), providing that a public officer may not be examined as to communications made to him in official confidence "when the public interest would suffer by the disclosure." (*Id.,* at p. 161.) Here, to the contrary, not only do appellants fail to assert that disclosure would be against the public interest, but it affirmatively appears that *preventing* disclosure would defeat important public policy initiatives adopted by the voters and Chief of Police of the City of Berkeley.

Appellants have not stated a cause of action based upon equitable estoppel.

*Do the police department's new policies constitute disclosure of "Presumptively Privileged" documents forbidden under Government Code section 6254?*

■ Appellants next argue that internal affairs bureau reports and their contents are "presumptively privileged" under Government Code

section 6254 and that Chief Pomeroy may not unilaterally waive this privilege.

Section 6254 exempts certain documents from the requirement of public disclosure under the California Public Records Act. (Gov. Code, § 6250 et seq.) The subdivision cited by appellants provides that ". . . nothing in this chapter shall be construed to *require* disclosure of records that are . . . (f) Records of complaints to or investigations conducted by, or records of intelligence information or security procedures of, the office of the Attorney General and the Department of Justice, and any state or local police agency, or any such investigatory or security files compiled by any other state or local agency for correctional, law enforcement or licensing purposes. . . ." (§ 6254, subd. (f), italics added.) Appellants' contention that section 6254 *prohibits* disclosure of the records described therein in the absence of a waiver by the agency involved is plainly in error. As the court stated in *Black Panther Party* v. *Kehoe* (1974) 42 Cal.App.3d 645 [117 Cal.Rptr. 106], the 14 exemptions which are listed in that section "are permissive, not mandatory; they permit nondisclosure but do not prohibit disclosure. When the agency exercises its permissive disclosure authority, public inspection follows." (*Id.,* at p. 656.) This interpretation is borne out by the last paragraph of section 6254 which states: "*Nothing in this section is to be construed as preventing any agency from opening its records* concerning the administration of the agency to public inspection, unless disclosure is otherwise prohibited by law." (Italics added.) Clearly, disclosure of a public agency's administrative records is not prohibited unless the agency itself asserts a privilege under the act. (See § 6255.) In the instant case it does not appear that either the city or the department is asserting any privilege of confidentiality under the Public Records Act. Nor do appellants, who are only employees of the department, have standing to assert a privilege against disclosure of the department's own investigative files. (§ 6252, subd. (b).) Since no privilege against disclosure has been asserted by the agencies involved, the exemptions provided for in section 6254 simply do not come into play. Consequently, appellants' corollary assertion that Chief Pomeroy cannot unilaterally "waive" the privilege of exemption is without foundation—the privilege must first be asserted before it can be waived.

*Cook* v. *Craig* (1976) 55 Cal.App.3d 773 [127 Cal.Rptr. 712], which is cited to us by appellants is not at all applicable. There, citizens were attempting to force disclosure of records of regulations and procedures of the California Highway Patrol Department, which attempt was resisted

by the department. (*Id.,* at p. 780.) Upon these facts, the court merely stated in dicta, that investigatory files and complaints would be exempt from disclosure under section 6254, subdivision (f). (*Id.,* at p. 783.) Nowhere did the court imply that the department had no choice but to withhold such records. In fact, the court went on to hold that the department could *not* validly assert a claim of privilege with respect to the records sought by plaintiffs. (*Id.,* at p. 784.)

As the court in *Cook* did declare, the general policy of the Public Records Act is to favor disclosure. (*Id.,* at p. 781.) It is thus clear that, under the act, disclosure of department records is permissible unless the department or city asserts a privilege of nondisclosure. Where, as here, no agency raises such a privilege or resists disclosure, the exemptions provided in section 6254 do not prohibit it.

### *Applicability of Younger v. Berkeley City Council.*

■ Appellants contend that implementation of the policies here involved would violate the ruling set forth in the case of *Younger* v. *Berkeley City Council* (1975) 45 Cal.App.3d 825 [119 Cal.Rptr. 830]. *Younger* is not applicable to the case at bench. There, the court merely invalidated a city ordinance which purported to allow citizens and residents of the city access to state arrest records. The court held that the city had acted in excess of its constitutional and statutory authority, since access to such records was a matter of statewide concern and the ordinance conflicted with sections of the Penal Code forbidding dissemination of that information except to agencies and persons authorized by law to receive it. Significantly, the Attorney General there conceded that the city could permit whatever access the city council deemed appropriate in the case of arrest records compiled by its own police department. (*Id.,* at pp. 832-833.)

### *Did the court err in sustaining the demurrer without leave to amend?*

■ The general rule is that it is an abuse of discretion to sustain a demurrer without leave to amend unless the complaint shows that it is incapable of amendment. (See e.g., *Greenberg* v. *Equitable Life Assur. Society* (1973) 34 Cal.App.3d 994, 998 [110 Cal.Rptr. 470].) But it is also true that where the nature of plaintiff's claim is clear, but under substantive law no liability exists, leave to amend should be denied, for no amendment could change the result. (3 Witkin, Cal. Procedure (2d ed.

1971) Pleading, § 847, p. 2451; *Robertson v. City of Long Beach* (1937) 19 Cal.App.2d 676, 679 [66 P.2d 167].) As discussed above, the complaint fails to state a cause of action under any theory against respondents. Appellants do not inform us of any manner in which their complaint could have been amended so as to state a claim upon which the requested relief could be granted. The order denying leave to amend was correct.

*Did the court state sufficiently its*
*grounds for sustaining the demurrer?*

■ Code of Civil Procedure section 472d provides, as pertinent: "Whenever a demurrer in any action or proceedings is sustained, the court shall include in its decision or order a statement of the specific ground or grounds upon which the decision or order is based which may be by reference to appropriate pages and paragraphs of the demurrer."

In the instant case, the court stated: "IT IS ORDERED that the demurrers to the said Petition and Complaint be and are sustained without leave to amend on the ground that the Petition and Complaint does not state facts sufficient to constitute a cause of action. . . ." Appellants claim in their reply brief that such a specification is not sufficient.

Appellants misapprehend the purpose of section 472d. That section was designed to fit a situation where multiple grounds are set forth in a demurrer. In such case, the court is required to specify the ground or grounds upon which it ruled so that a reviewing court may be apprised as to which grounds were relied upon by the ruling court. (See, generally, 3 Witkin, Cal. Procedure (2d ed. 1971) Pleading, §§ 801, 811, 840.)

In the present case, respondents' sole ground has always been that the complaint "does not state facts sufficient to state a cause of action."

Appellants do not tell us how the trial court could have stated more specific grounds, other than presumably setting forth a memorandum of decision stating in detail its reasons for sustaining the demurrer. Such a statement is clearly not required: "The party against whom an order is made sustaining a demurrer is not entitled to notice of the motive or reasoning which induced the judge to make the order." (*People v. Central Pacific R. R. Co.* (1888) 76 Cal. 29, 43 [18 P. 90].)

*Conclusion*

■  The notice of appeal filed by appellants indicates that they appeal from the order sustaining the demurrers as well as from the judgment. The order is nonappealable. (*Kennedy* v. *Owen* (1948) 85 Cal.App.2d 517, 519 [193 P.2d 141].)

Under the circumstances here present we may either treat both notices of appeal as applying to the judgment (6 Witkin, Cal. Procedure (2d ed. 1971) Appeal, § 336) or dismiss the purported appeal from the order. (*Kennedy, supra,* at p. 520.) In either event, the result would be the same.

The judgment is affirmed. The appeal from the order sustaining the demurrers is dismissed.

Caldecott, P. J., and Rattigan, J., concurred.

A petition for a rehearing was denied January 19, 1978, and appellants' petition for a hearing by the Supreme Court was denied March 9, 1978.