[No. A075959. First Dist., Div. Three. Apr. 30, 1997.]

FRANCISCO JOSE RIVERO, Petitioner, v.
THE SUPERIOR COURT OF THE CITY AND COUNTY OF SAN
FRANCISCO, Respondent;
ARLO SMITH as District Attorney, etc., et al., Real Parties in Interest.

**COUNSEL**

Randall B. Aiman-Smith for Petitioner.

Thomas R. Burke, Davis Wright Tremaine and Elizabeth Pritzker as Amici Curiae on behalf of Petitioner.

No appearance for Respondent.

Louise H. Renne, City Attorney, Patrick J. Mahoney and Hajime Tada, Deputy City Attorneys, for Real Parties in Interest.

**OPINION**

**CORRIGAN, J.**—Here we hold that neither the California Public Records Act (CPRA) (Gov. Code, § 6250 et seq.)[1] nor the San Francisco Sunshine Ordinance (Ordinance) (S.F. Admin. Code, ch. 67) compels disclosure of district attorney criminal investigation files. Section 25303 prevents a county board of supervisors from obstructing the investigatory and prosecutorial

---

[1]Except as otherwise indicated, all statutory references are to the Government Code. Although the California Supreme Court has used both PRA and CPRA in its references to the act (compare *Powers* v. *City of Richmond* (1995) 10 Cal.4th 85, 89 [40 Cal.Rptr.2d 839, 893 P.2d 1160] [PRA] and *CBS, Inc.* v. *Block* (1986) 42 Cal.3d 646, 649 [230 Cal.Rptr. 362, 725 P.2d 470] [PRA] with *Williams* v. *Superior Court* (1993) 5 Cal.4th 337, 341 [19 Cal.Rptr.2d 882, 852 P.2d 377] [CPRA]), we use CPRA because the official short title of the chapter covering inspection of public records is the California Public Records Act. (§ 6251.)

functions of a district attorney. Applying the ordinance as petitioner here urges would constitute such an obstruction.

### Facts and Procedural History

In 1994, San Francisco District Attorney Arlo Smith received information leading to the investigation of a local official for failing to account properly for public funds. The district attorney's office maintained a confidential file of its investigation, which ended with a decision "not to prosecute for lack of evidence of any criminal wrongdoing." According to the deputy in charge, the office "closed its file on the matter."

On October 18, 1995, Francisco Jose Rivero, a former police officer who had instigated the investigation, presented a written request for the complete investigation file. Rivero cited the CPRA and the Ordinance. He referred to a deputy city attorney's statement in federal court that a complete investigation had been conducted and no wrongdoing had been found.

Smith answered Rivero promptly, conceding that the investigation was closed but denying the request. He asserted that investigation files were exempt from disclosure and that the exemption continued after the investigation ended. He noted Rivero's federal court action against the city and suggested that the request was related to that civil action. He left open the possibility that he would comply with a more limited request.

On November 2, 1995, Rivero filed a complaint against Smith in superior court under the CPRA and the Ordinance for release of the investigation file. Smith answered and moved for summary judgment on the ground the file was exempt from disclosure. The court granted summary judgment, and this petition followed. We granted a request by the California First Amendment Coalition; the Society of Professional Journalists, Northern California Chapter; and the First Amendment Project to file a brief amici curiae in support of Rivero.

### CPRA

"CPRA, adopted in 1968 (Stats. 1968, ch. 1473, § 39, pp. 2945-2948), acknowledges the tension between privacy and disclosure: 'In enacting this chapter, the Legislature, mindful of the right of individuals to privacy, finds and declares that access to information concerning the conduct of the people's business is a fundamental and necessary right of every person in this state.' (Gov. Code, § 6250.) CPRA provides that '[p]ublic records are open to inspection at all times during the office hours of the state or local

agency and every person has a right to inspect any public record, except as hereafter provided. . . .' (Gov. Code, § 6253, subd. (a).) CPRA then provides various exemptions, including '[p]ersonnel, medical, or similar files, the disclosure of which would constitute an unwarranted invasion of personal privacy . . .' (Gov. Code, § 6254, subd. (c)), [and] certain investigatory and security files (Gov. Code, § 6254, subd. (f); . . .) . . . ." (*City of Richmond* v. *Superior Court* (1995) 32 Cal.App.4th 1430, 1433 [38 Cal.Rptr.2d 632].)

Section 6254, subdivision (f) provides that "[r]ecords of complaints to, or investigations conducted by . . . the office of the Attorney General and the Department of Justice, and any state or local police agency, or any investigatory or security files compiled by any other state or local police agency, or any investigatory or security files compiled by any other state or local agency for correctional, law enforcement, or licensing purposes . . ." shall be exempt from disclosure, except that certain information must be disclosed to victims, insurance companies, and persons harmed by certain crimes. Subdivision (f)(1) and (2) provides, however, for disclosure to the public of certain information about arrests and about citizens' complaints and requests for assistance. The disclosure exemption extends indefinitely, even after an investigation is closed. (See *Williams* v. *Superior Court, supra,* 5 Cal.4th at pp. 355-362.)

The CPRA also permits a state or local agency "[e]xcept as otherwise prohibited by law" to "adopt requirements for itself which allow greater access to records than prescribed by the minimum standards set forth in" the CPRA. (§ 6253.1.)

### San Francisco's Sunshine Ordinance

The Ordinance is presented in four articles, the first of which states the legislative findings and purpose of the Ordinance. The second article governs public access to meetings, the third authorizes access to governmental information, and the fourth provides for a task force and designates responsibility for implementing the Ordinance.

The findings and purpose are stated broadly: ". . . [¶] (a) Government's duty is to serve the public, reaching its decisions in full view of the public. [¶] (b) Commissions, boards, councils and other agencies of the City and County exist to conduct the people's business. This ordinance will assure that their deliberations are conducted before the people and that City operations are open to the people's review. [¶] (c) . . . Violations of open government principles occur at all levels, from local advisory boards to the

highest reaches of the State hierarchy. [¶] . . . [¶] (e) The people of San Francisco want an open society. They do not give their public servants the right to decide what they should know. The public's right to know is as fundamental as its right to vote. To act on truth, the people must be free to learn the truth. [¶] (f) The sun must shine on all the workings of government so the people may put their institutions right when they go wrong. . . ." (S.F. Admin. Code, §·67.1.)

Article II, covering public access to meetings, is not involved here. Article III provides for release of documentary public information for inspection and copying. Section 67.24, the provision in issue, provides that "Notwithstanding the department's legal discretion to withhold certain information under the California Public Records Act, the following policies shall govern specific types of documents and information: [¶] . . . [¶] (d) **Law Enforcement Information.** No records pertaining to any investigation, arrest or other law enforcement activity shall be exempt from disclosure under Government Code Section 6254, Subdivision (f) beyond the point where the prospect of any enforcement action has been terminated by either a court or a prosecutor. When such a point has been reached, related records of law enforcement activity shall be accessible, except that individual items of information in the following categories may be withheld: [names of witnesses, private information unrelated to the investigation, etc.]." Thus, unlike the CPRA, the Ordinance does not provide a temporally unlimited exemption for law enforcement files.

Article IV calls for the board of supervisors to appoint a task force to help implement the Ordinance (S.F. Admin. Code, § 67.30) and establishes responsibility for implementing it: "The Mayor shall administer and coordinate the implementation of the provisions of this Chapter for departments under his or her control. The Mayor shall administer and coordinate the implementation of the provisions of this Chapter for departments under the control of boards and commissions appointed by the Mayor. Elected officers shall administer and coordinate the implementation of the provisions of this Chapter for departments under their respective control . . ." (S.F. Admin. Code, § 67.31).

*Local Control Over Municipal Affairs*

Home rule charter cities, such as San Francisco (see *Rossi* v. *Brown* (1995) 9 Cal.4th 688, 697, fn. 3 [38 Cal.Rptr.2d 363, 889 P.2d 557]; *Pac. Tel. & Tel. Co.* v. *City & County of S.F.* (1959) 51 Cal.2d 766, 769 [336 P.2d 514]), have "autonomy with respect to all municipal affairs" and are subject to general state laws as to matters of statewide concern only "if it is the

intent and purpose of such general laws to occupy the field to the exclusion of municipal regulation . . . ." (*Bishop* v. *City of San Jose* (1969) 1 Cal.3d 56, 61-62 [81 Cal.Rptr. 465, 460 P.2d 137].) "As is made clear in the leading case of *Pipoly* v. *Benson* [(1942) 20 Cal.2d 366, 369-370 (125 P.2d 482, 147 A.L.R. 515)], local governments (whether chartered or not) do not lack the power, nor are they forbidden by the Constitution, to legislate upon matters which are not of a local nature, nor is the Legislature forbidden to legislate with respect to the local municipal affairs of a home rule municipality. Instead, in the event of conflict between the regulations of state and of local governments, or if the state legislation discloses an intent to preempt the field to the exclusion of local regulation, the question becomes one of predominance or superiority as between general state laws on the one hand and the local regulations on the other. [Citations.]" (*Id.* at p. 62.)

### The Superior Court's Analysis

The superior court issued a six-page statement of decision granting summary judgment in which it agreed with Smith's position that the Ordinance was never intended and did not apply to the district attorney, who was "a state officer when conducting criminal investigations . . . ." The court conceded that, for many purposes, the district attorney was a county officer under the control of the county board of supervisors. However, county control did not extend to the district attorney's enforcement of state criminal law. The records created during these state investigations were state records exempt from disclosure even after the investigation was closed. The court explained its reasons for rejecting Rivero's counterarguments.

We conclude the trial court reached the correct result, although we are not persuaded by all its reasoning. "No rule of decision is better or more firmly established by authority . . . than that a ruling or decision, itself correct in law, will not be disturbed on appeal merely because given for a wrong reason." (*Davey* v. *Southern Pacific Co.* (1897) 116 Cal. 325, 329 [48 P. 117].)

### Applying the Sunshine Ordinance

■ We consider first whether the board of supervisors passed an ordinance that applies to the district attorney's office. Smith contends the Ordinance applies only to city and county departments, and the district attorney's office is not a department of San Francisco government. He refers to the San Francisco Charter, which describes various departments (e.g., building inspection, elections, fire, human resources, juvenile probation, and police) but does not refer to the district attorney's office as a department.

Smith insists that the district attorney is a state officer under the California Constitution and is not covered by the Ordinance.

Rivero does not address the meaning of "department," but argues that the Ordinance's purpose and scope are broad, covering "government," "public servants," and "institutions." Rivero notes that the Ordinance does not state "except the district attorney."

Amici curiae point out that section 24000, subdivision (a) makes the district attorney a county officer. Other sections provide that compensation of county officers is set by the county board of supervisors (§ 25300) and that expenses of the district attorney's office are generally the county's responsibility (§ 29601).

We conclude the Ordinance was passed with the intent that it apply to the district attorney's office. Article III of the Ordinance, covering access to "Public Information," compels city "departments" to provide access to various public records. The article opens by defining "[d]epartment," to mean "a department of the City and County of San Francisco." (S.F. Admin. Code, § 67.20, subd. (a).) This explanation begs the question of what constitutes a "department" of San Francisco government. However, after examining the use of "department" throughout article III, we conclude that the Ordinance uses it generically to refer to any office, agency, department, or other work unit conducting the business of local government, without regard to whether the office might be called a "department" by the city charter or other legal documents.[2]

---

[2]See, e.g., San Francisco Administrative Code sections 67.21, subdivision (b) (". . . information . . . shall be made available . . . in any form . . . which is available to the *department*, its officers or employees . . . . Nothing . . . shall require a *department* to program or reprogram a computer . . . ."); 67.22, subdivision (a) ("Every *department* head shall designate a person . . . knowledgeable about the affairs of the *department* . . . . If a *department* has multiple bureaus . . . ."); 67.24 ("Notwithstanding the *department's* legal discretion to withhold certain information . . . the following policies shall govern specific types of documents and information: [¶] (a)(1) . . . no preliminary draft or *department* memorandum shall be exempt . . . . [¶] . . . [¶] (b)(1) No pre-litigation claim . . . received or created by a *department* . . . shall be exempt . . . . [¶] (2) . . . all communications between the *department* and the adverse party shall be subject to disclosure . . . . [¶] (c) None of the following shall be exempt . . . . [¶] . . . [¶] (5) Any memorandum of understanding between the City or *department* and a recognized employee organization. [¶] (d) No records pertaining to any investigation . . . shall be exempt . . . beyond the point where the prospect of any enforcement action has been terminated . . . . The subdivision shall not exempt . . . any record of a concluded . . . enforcement action by an officer or *department* responsible for regulatory protection of the public health, safety or welfare."); 67.28, subdivision (d) ("A *department* may establish and charge a higher fee than the one cent presumptive fee [for copying] . . . ."); 67.29 ("Each *department* may cooperate with any

Our conclusion is bolstered by article IV's wording in establishing the Sunshine Ordinance Task Force and designating responsibility for administering the Ordinance. The task force is to "advise the Board of Supervisors and provide information to other City departments" on ways to implement the Ordinance. (S.F. Admin. Code, § 67.30, subd. (c).) The word "other" shows that the board of supervisors considered itself a department for purposes of the Ordinance. The board does not have the title "department" and is not called a department by the city charter. The board's reference to itself as a department suggests that "department" is a generic term that covers the district attorney's office as well.

San Francisco Administrative Code section 67.31, which implements the Ordinance throughout city government, confirms that the Ordinance applies to offices not designated as departments by the city charter. That section compels the mayor to administer and implement the Ordinance for "departments under his or her control" and for "departments under the control of boards and commissions appointed by [him or her]." Elected officers (which would include the district attorney) administer and implement the Ordinance for "departments" under their control. The Ordinance cannot be read in the restrictive way Smith and the trial court have read it. By its terms, it applies to the district attorney's office.

### Obstruction of State Action and Disclosure of State Records

Our analysis of the Ordinance does not end here, however. The next issue is whether the Ordinance applies to all district attorney records, including those related to investigations of criminal allegations. Smith contends that other statutes and constitutional provisions demonstrate that the board of supervisors is precluded from passing laws that impinge on criminal investigations by the district attorney. He directs our attention to Penal Code section 684, section 25303, and article V, section 13 of the California Constitution.

Penal Code section 684 provides that criminal actions are to be prosecuted in the name of the People of the State of California. According to Smith, this makes the district attorney an officer of the state. Article V, section 13 of the California Constitution provides that "[t]he Attorney General shall have direct supervision over every district attorney . . . in all matters pertaining to the duties of their respective offices . . . ." Section 25303, while providing that the board of supervisors will supervise the official conduct of county officers, affirms prosecutorial independence and states that the board shall

voluntary effort . . . to compile a master index to the types of records it maintains . . . ."). (Italics added, section headings omitted.)

not "obstruct the investigative and prosecutorial function of the district attorney of a county." Smith argues that forcing disclosure of a closed investigation file would interfere with the district attorney in the same way as would disclosing an open file, because the threat of disclosure might affect the district attorney's decision to begin an investigation. The trial court did not address directly the issue of obstructing investigations.

Rivero concedes that the district attorney is a "state actor" when prosecuting a crime and that the board of supervisors may not obstruct a district attorney's investigatory and prosecutorial functions. He contends, however, that the Ordinance does not interfere with investigations, because it operates only after the investigation is closed. Rivero also suggests that the district attorney is not a state actor when merely retaining files. Rivero disputes Smith's claim that investigations will be chilled. According to Rivero, the district attorney's ability under the Ordinance to protect such matters as investigative techniques and informants' names nullifies any chilling that inspecting the files might otherwise cause.

Amici curiae object to the court granting summary judgment without any proof that San Francisco Administrative Code section 67.24, subdivision (d) actually obstructs or interferes with the district attorney's investigatory and prosecutorial functions. They also argue that the court erred in ruling that the district attorney's investigation files are "state records" at any stage of the investigation. Amici curiae offer *Dibb* v. *County of San Diego* (1994) 8 Cal.4th 1200 [36 Cal.Rptr.2d 55, 884 P.2d 1003] (*Dibb*) as an example of the California Supreme Court approving potentially greater interference with state law prosecutions.

In *Dibb*, the Supreme Court upheld a county charter amendment creating a citizen review board with authority to investigate public complaints against the county sheriff and probation departments. The review board was given broad power to subpoena witnesses and documents. (8 Cal.4th at p. 1204.) The *Dibb* court answered concerns about state law preemption by assuming that the review board would comply with section 25303 by not obstructing the investigative functions of the sheriff or the district attorney. (*Dibb, supra*, at pp. 1209-1210.)

Amici curiae cite *Dibb* to show that full subpoena power does not obstruct or interfere with the district attorney's investigative and prosecutorial functions. Thus, amici curiae contend that the lesser power offered by San Francisco Administrative Code section 67.24, subdivision (d), to examine closed investigation files, cannot possibly interfere with the district attorney. Amici curiae read too much from *Dibb*. The court did not approve full

subpoena power or define "obstruction" for purposes of section 25303. As amplified in the concurring opinion, the court merely *assumed* "until the contrary is demonstrated, that the Board will exercise its subpoena powers in ways that avoid any such obstruction or interference." (See *Dibb, supra*, 8 Cal.4th at p. 1219 (conc. opn. of Kennard, J.).)

Amici curiae's position that summary judgment was premature because Smith did not prove obstruction of his investigative or prosecutorial function also fails. The propriety of locally compelled disclosure of a district attorney's closed investigation files is a question of policy and of law. It is not to be decided differently in each county based on evidence about a particular district attorney's office or the factual nuances of individual cases.[3]

The superior court cited *Williams v. Superior Court, supra*, 5 Cal.4th at pages 355-357, for the proposition that the district attorney's investigation files were state records not subject to locally compelled disclosure. Amici curiae correctly note that the *Williams* court, which held that the CPRA applied to closed investigation files, did not describe the files as state records and did not consider whether such files were subject to local disclosure ordinances.

Whether to describe the district attorney as a state actor or a local actor and whether to characterize the district attorney's closed files as state records or local records beg the central question before us. The more fundamental and dispositive legal question is one of first impression. ▮ Does compelled disclosure of closed criminal investigation files obstruct the investigatory function of the district attorney's office, thus contravening section 25303? We conclude it does.

Very few activities performed by public officials are more important to the public and to the individuals most directly involved than the full and proper investigation of criminal complaints. Every effort must be made to ensure that investigators can gather all evidence that is available and legally obtainable. Without the assurance of continuing confidentiality, potential witnesses could easily be dissuaded from coming forward. Even if they knew that sensitive information would not automatically be turned over, publicity-shy witnesses would still have reason to be wary.

It is not a complete answer that publicity-shy witnesses may already be deterred from coming forward by the prospect of being subpoenaed for a

---

[3]As we will explain below, potential witnesses and citizens providing information anonymously must have assurances about the confidentiality of their reports. Ad hoc decisions by the various superior courts cannot provide such assurances to potential witnesses.

criminal trial. Sometimes anonymous sources, well known to the targets of investigations, provide important information. That information, though not usable itself, may help focus the inquiry and lead to the acquisition of admissible evidence. These sources' anonymity would be compromised and their willingness to provide information hindered if the subjects could easily review investigation files.

We acknowledge a footnote in *Williams* that suggests the public may have no interest in preventing disclosure of a prosecutors' closed investigation files. After concluding that the CPRA in its then current form protected closed investigation files, the *Williams* court offered advice to the Legislature: "In our view, the matter does appear to deserve legislative attention. Although there are good reasons for maintaining the confidentiality of investigatory records even after an investigation has ended [citation], those reasons lose force with the passage of time. Public policy does not demand that stale records be kept secret when their disclosure can harm no one, and the public good would seem to require a procedure by which a court may declare that the exemption for such records has expired." (*Williams* v. *Superior Court, supra,* 5 Cal.4th at pp. 361-362, fn. 13.)

We observe, however, that the Legislature has amended section 6254 more than once since the *Williams* decision, but has not revised the statute to permit disclosure of closed investigation files. We will not do what the Legislature has declined to do.

### Conflict With State Law

Next we consider whether San Francisco may override section 23503 by adopting a municipal ordinance that interferes with the district attorney's state criminal law investigations. San Francisco is autonomous with respect to all municipal affairs. As to matters of statewide concern, however, it is subject to overriding general state laws. (*Bishop* v. *City of San Jose, supra,* 1 Cal.3d at pp. 61-63.) Investigation and prosecution of state criminal law are statewide concerns, not municipal affairs. (See *In re Lane* (1962) 58 Cal.2d 99, 106, 111-112 [22 Cal.Rptr. 857, 372 P.2d 897] (conc. opn. of Gibson, J.).)[4] Conflicting local ordinances, such as San Francisco Administrative Code section 67.24, subdivision (d), must yield.

Section 6253.1, which allows local agencies to permit greater access to records than offered by the CPRA, does not compel a different conclusion. It

---

[4]Rivero may be correct that the subject matter of this particular investigation, possible theft of county funds, is in many ways a municipal affair. However, prosecution for the violation of state law is nevertheless a statewide concern and disclosure of Smith's investigation files in this case could have a wide impact on enforcement of state criminal law, inhibiting future investigations of all kinds.

does not authorize a local board of supervisors to violate section 23503. Similarly, the fact that Smith could voluntarily disclose records of his investigations (see *Berkeley Police Assn.* v. *City of Berkeley* (1977) 76 Cal.App.3d 931, 941-942 [143 Cal.Rptr. 255]) does not mean that the board of supervisors may compel him to do so.

*In Camera Review for Exemption From Section 6254, Subdivision (f)*

Rivero's final claim is that Smith improperly failed to produce even that information subject to release under section 6254, subdivision (f), such as names and addresses of persons involved and of witnesses, a description of the property involved, and the date, time and location of each incident complained about. He argues that the trial court should have inspected the file in camera and determined whether Smith's request for blanket exemption from disclosure was justified.

Here, Rivero sought disclosure of the complete file. No more narrow request was articulated. The holder of the file is not obliged to redraft the request to comply with section 6254, subdivision (f) or to offer the entire file to the court for in camera review and extraction of those records not exempt from disclosure. (See *City of Richmond* v. *Superior Court, supra,* 32 Cal.App.4th at pp. 1440-1441.)

*Disposition*

The order to show cause is discharged, and the petition for a peremptory writ of mandate is denied.

Phelan, P. J., and Parrilli, J., concurred.

A petition for a rehearing was denied May 21, 1997, and petitioner's application for review by the Supreme Court was denied July 23, 1997.