[No. B032591. Second Dist., Div. Six. Apr. 12, 1989.]

GAVIN L. McDONALD, a Minor, etc., Plaintiff and Appellant, v. JOHN P. SCRIPPS NEWSPAPER et al., Defendants and Respondents.

**COUNSEL**

J. N. Wiedman and Scott Gsell for Plaintiff and Appellant.

Christopher S. Teske, Edward R. Neville and Baraban & Teske for Defendants and Respondents.

---

**OPINION**

**GILBERT, J.**—Question—When should an attorney say "no" to a client? Answer—When asked to file a lawsuit like this one.

Master Gavin L. McDonald did not win the Ventura County Spelling Bee. Therefore, through his guardian ad litem,[1] he sued. Gavin alleges that contest officials improperly allowed the winner of the spelling bee to compete. Gavin claimed that had the officials not violated contest rules, the winner "would not have had the opportunity" to defeat him. The trial court wisely sustained a demurrer to the complaint without leave to amend.

We affirm because two things are missing here—causation and common sense. Gavin lost the spelling bee because he spelled a word wrong. Gavin contends that the winner of the spelling bee should not have been allowed to compete in the contest. Gavin, however, cannot show that but for the contest official's allowing the winner to compete, he would have won the spelling bee.

In our puzzlement as to how this case even found its way into court, we are reminded of the words of a romantic poet.

> "The [law] is too much with us; late and soon,
> Getting and spending, we lay waste our powers:
> Little we see in Nature that is ours;
> We have given our hearts away, a sordid boon!"

(Wordsworth, *The World Is Too Much With Us* (1807) with apologies to William Wordsworth, who we feel, if he were here, would approve.)

FACTS

Gavin was a contestant in the 1987 Scripps Howard National Spelling Bee, sponsored in Ventura County by the newspaper, the Ventura County Star-Free Press. The contest is open to all students through the eighth grade who are under the age of 16. Gavin won competitions at the classroom and

---

[1] We do not hold Gavin responsible.

school-wide levels. This earned him the chance to compete against other skilled spellers in the county-wide spelling bee. The best speller in the county wins a trip to Washington D.C. and a place in the national finals. The winner of the national finals is declared the national champion speller.

Gavin came in second in the county spelling bee. Being adjudged the second best orthographer in Ventura County is an impressive accomplishment, but pique overcame self-esteem. The spelling contest became a legal contest.

We search in vain through the complaint to find a legal theory to support this metamorphosis. Gavin alleges that two other boys, Stephen Chen and Victor Wang, both of whom attended a different school, also competed in the spelling contest. Stephen had originally lost his school-wide competition to Victor. Stephen was asked to spell the word "horsy." He spelled it "h-o-r-s-e-y." The spelling was ruled incorrect. Victor spelled the same word "h-o-r-s-y." He then spelled another word correctly, and was declared the winner.

Contest officials, who we trust were not copy editors for the newspaper sponsoring the contest, later discovered that there are two proper spellings of the word "horsy," and that Stephen's spelling was correct after all.[2]

Contest officials asked Stephen and Victor to again compete between themselves in order to declare one winner. Victor, having everything to lose by agreeing to this plan, refused. Contest officials decided to allow both Victor and Stephen to advance to the county-wide spelling bee, where Gavin lost to Stephen.

Taking Vince Lombardi's aphorism to heart, "Winning isn't everything, it's the only thing," Gavin filed suit against the Ventura County Star-Free Press and the Scripps Howard National Spelling Bee alleging breach of contract, breach of implied covenant of good faith and fair dealing, and intentional and negligent infliction of emotional distress.

In his complaint, Gavin asserts that contest officials violated spelling bee rules by allowing Stephen Chen to compete at the county level. He suggests that had Stephen not progressed to the county-wide competition, he, Gavin, would have won. For this leap of faith he seeks compensatory and punitive damages.

The trial court sustained Scripps's demurrer without leave to amend because the complaint fails to state a cause of action. The action was dismissed, and Gavin appeals.

---

[2] "[H]orsey also horsy 1: relating to, resembling, or suggestive of a horse 2: addicted to or having to do with horses or horse racing or characteristic of the manners, dress, or tastes of horsemen." (Webster's Third New Internat. Dict. (1961) p. 1093.)

## Discussion

■ Gavin asserts that he has set forth the necessary elements of a cause of action for breach of contract, and that these elements are: "(1) The contract; (2) Plaintiff's performance; (3) Defendant's breach; (4) Damage to plaintiff. 4 *Witkin,* California Procedure, *Pleading,* § 464 (3rd Ed. 1985)."

Gavin's recitation of the law is correct, but his complaint wins no prize. He omitted a single word in the fourth element of an action for breach of contract, which should read "damage to plaintiff *therefrom.*" (4 Witkin, Cal. Procedure (3d ed. 1985) Pleading, § 464, p. 504, italics added.) Not surprisingly, the outcome of this case depends on that word. ■ A fundamental rule of law is that "whether the action be in tort or contract compensatory damages cannot be recovered unless there is a causal connection between the act or omission complained of and the injury sustained." (*Capell Associates, Inc.* v. *Central Valley Security Co.* (1968) 260 Cal.App.2d 773, 779 [67 Cal.Rptr. 463]; *State Farm Mut. Auto. Ins. Co.* v. *Allstate Ins. Co.* (1970) 9 Cal.App.3d 508, 528 [88 Cal.Rptr. 246]; Civ. Code, §§ 3300, 3333.)

The erudite trial judge stated Gavin's shortcoming incisively. "I see a gigantic causation problem . . . ." Relying on the most important resource a judge has, he said, "common sense tells me that this lawsuit is nonsense."

■ Even if Gavin and Scripps had formed a contract which Scripps breached by allowing Stephen Chen to compete at the county level in violation of contest rules, nothing would change. Gavin cannot show that he was injured by the breach. Gavin lost the spelling bee because he misspelled a word, and it is irrelevant that he was defeated by a contestant who "had no right to advance in the contest."

Gavin argues that had the officials "not violated the rules of the contest, Chen would not have advanced, and would not have had the opportunity to defeat" Gavin. Of course, it is impossible for Gavin to show that he would have spelled the word correctly if Stephen were not his competitor. Gavin concedes as much when he argues that he would not have been damaged if defeated by someone who had properly advanced in the contest. That is precisely the point.

Gavin cannot show that anything would have been different had Stephen not competed against him. Nor can he show that another competitor would have also misspelled that or another word, thus allowing Gavin another opportunity to win. ■ "It is fundamental that damages which are speculative, remote, imaginary, contingent, or merely possible cannot serve as a legal basis for recovery." (*Earp* v. *Nobmann* (1981) 122 Cal.App.3d 270, 294 [175 Cal.Rptr. 767].)

■ Gavin offers to amend the complaint by incorporating certain rules of the spelling bee which purportedly show that the decision to allow Stephen to advance in the competition was procedurally irregular. This offer to amend reflects a misunderstanding of the trial court's ruling. The fatal defect in the complaint is that Gavin cannot show that but for Stephen Chen's presence in the spelling bee, Gavin would have won.

■ "The general rule is that it is an abuse of discretion to sustain a demurrer without leave to amend unless the complaint shows that it is incapable of amendment. [Citation.] But it is also true that where the nature of plaintiff's claim is clear, but under substantive law no liability exists, leave to amend should be denied, for no amendment could change the result." (*Berkeley Police Assn.* v. *City of Berkeley* (1977) 76 Cal.App.3d 931, 942 [143 Cal.Rptr. 255].)

The third cause of action, states that plaintiff has suffered humiliation, indignity, mortification, worry, grief, anxiety, fright, mental anguish, and emotional distress, not to mention loss of respect and standing in the community. These terms more appropriately express how attorneys who draft complaints like this should feel.

A judge whose prescience is exceeded only by his eloquence said that ". . . Courts of Justice do not pretend to furnish cures for all the miseries of human life. They redress or punish gross violations of duty, but they go no farther; they cannot make men virtuous: and, as the happiness of the world depends upon its virtue, there may be much unhappiness in it which human laws cannot undertake to remove." (*Evans* v. *Evans* (1790) Consistory Court of London.) Unfortunately, as evidenced by this lawsuit, this cogent insight, although as relevant today as it was nearly 200 years ago, does not always make an impression on today's practitioner.

In *Shapiro* v. *Queens County Jockey Club* (1945) 184 Misc. 295 [53 N.Y.S.2d 135], plaintiff's horse was the only horse to run the full six furlongs in the sixth race at Aqueduct Race Track after racing officials declared a false start. A half hour later the sixth race was run again, and plaintiff's horse came in fifth out of a total of six.

The *Shapiro* court held that plaintiff had no cause of action against the race track. Plaintiff could not support the theory that his horse would have won the second time around if all the other horses had also run the six furlongs after the false start. Plaintiff was not content to merely chalk up his loss to a bad break caused by the vicissitudes of life. The lesson to be learned is that all of us, like high-strung horses at the starting gate, are subject to life's false starts. The courts cannot erase the world's imperfections.

The Georgia Supreme Court in *Georgia High School Ass'n* v. *Waddell* (1981) 248 Ga. 542 [285 S.E.2d 7], decided it was without authority to review the decision of a football referee regarding the outcome of the game. The court stated that the referee's decision did not present a justiciable controversy. ■ Nor does the decision of the spelling bee officials present a justiciable controversy here.

Our decision at least keeps plaintiff's bucket of water from being added to the tidal wave of litigation that has engulfed our courts.[3]

*Sanctions—A close call*

Causation has been counsel's nemesis. Its absence makes Gavin's quest for "justice" an illusory one. The lack of causation in the complaint is the cause for dismissal of the complaint. Counsel could not show us or the trial court how an amendment could cure the complaint. The lesson should have been learned at the trial court. As the law disregards trifles (Civ. Code, § 3533), so, too, one should not trifle with the Court of Appeal. ■ The filing of an appeal here, for a case so trivial, and so lacking in merit, makes it a likely candidate for sanctions.

To counsel's credit, we are convinced that he did not prosecute this appeal for an improper motive or to delay the effect of an adverse judgment. He, therefore, at least avoids two criteria set forth in *In re Marriage of Flaherty* (1982) 31 Cal.3d 637 [183 Cal.Rptr. 508, 646 P.2d 179]. This case, however, lacks merit, and we cannot conceive of a reasonable attorney who would disagree with this appraisal.

Falling within a criterion of *Flaherty,* however, does not in and of itself compel sanctions. The *Flaherty* court warned that "any definition must be read so as to avoid a serious chilling effect on the assertion of litigants' rights on appeal. . . . An appeal that is simply without merit is *not* by definition frivolous and should not incur sanctions. Counsel should not be deterred from filing such appeals out of a fear of reprisals." (*In re Marriage of Flaherty, supra,* 31 Cal.3d at p. 650.)

It is creative and energetic counsel who from time to time challenge existing law and question past policies. This insures that the law be a living and dynamic force. Although noble aims were not advanced here, we are mindful of the caution in *Flaherty* that the borderline between appeals that are frivolous and those that simply have no merit is vague, and that punishment should be used sparingly "to deter only the most egregious conduct."

[3] Judge Irving Kaufman of the Second Circuit Court of Appeals, in a speech, has spoken of the alarming tidal wave of litigation in this country that shows no signs of abatement. (*Cherna* v. *Cherna* (Fla.Dist.Ct.App. 1983) 427 So.2d 395, 396, fn. 2.)

(*In re Marriage of Flaherty, supra,* 31 Cal.3d at pp. 650-651.) We therefore decline to impose sanctions, but we hope this opinion will serve as a warning notice for counsel to be discerning when drawing the line between making new law or wasting everyone's time.

### Advice to Gavin and an aphorism or two

Gavin has much to be proud of. He participated in a spelling bee that challenged the powers of memory and concentration. He met the challenge well but lost out to another contestant. Gavin took first in his school and can be justifiably proud of his performance.

It is this lawsuit that is trivial, not his achievement. Our courts try to give redress for real harms; they cannot offer palliatives for imagined injuries.

Vince Lombardi may have had a point, but so did Grantland Rice—It is "not that you won or lost—but how you played the game".

As for the judgment of the trial court, we'll spell it out. A-F-I-R-M-E-D. Appellant is to pay respondent's costs on appeal.

Stone (S. J.), P. J., and Abbe, J., concurred.