Lynn **LYONS**, on behalf of herself and all others similarly situated, Plaintiff,

v.

**COXCOM, INC.,** doing business as Cox Communications, Inc.; Cox Enterprises, Inc.; and Does 1–250, Defendants.

Case No. 08–CV–02047–H (CAB).

United States District Court, S.D. California.

June 8, 2009.

See also 2009 WL 347285.

Christopher M. Burke, Scott + Scott LLP, San Diego, CA, Eric S. Somers, Mark N. Todzo, Lexington Law Group, San Francisco, CA, for Plaintiff.

Richard R. Patch, Susan K. Jamison, Zuzana S. Ikels, Coblentz Patch Duffy and Bass, San Francisco, CA, for Defendants.

## ORDER DENYING MOTION TO STRIKE, GRANTING IN PART MOTION TO DISMISS WITH LEAVE TO AMEND, & VACATING ORDER

MARILYN L. HUFF, District Judge.

On November 4, 2008, Plaintiff Lynn Lyons ("Lyons") filed a class action complaint against Defendant Coxcom, Inc., doing business as Cox Communications, Inc. ("Cox"). (Doc. No. 1, Compl.) On February 6, 2009, 2009 WL 347285, the Court granted Defendant Cox's motion to dismiss and granted Plaintiff leave to amend. (Doc. No. 34.) Plaintiff filed a first amended class action complaint ("FAC") on March 9, 2009 against Cox Communications, Inc. and Cox Enterprises, Inc. (Doc. No. 35.) On April 2, 2009, Defendant Cox filed a motion to strike the class allegations and dismiss the FAC for lack of subject matter jurisdiction and a motion to dismiss the FAC for failure to state a claim. (Doc. Nos. 40 & 42.) Defendant also filed a request for judicial notice. (Doc. No. 41.) On May 11, 2009, Plaintiff filed a response in opposition and a request for judicial notice. (Doc. Nos. 46–47.) On May 29, 2009, Defendant filed a reply. (Doc. No. 49.) Plaintiff filed a notice of supplemental authority on June 1, 2009. (Doc. No. 52.) On June 7, 2009, Defendant filed a response to Plaintiff's notice of supplemental authority. (Doc. No. 54.)

The Court held a hearing on the matter on June 8, 2009. Richard Patch appeared on behalf of Cox and Mark Todzo appeared on behalf of Plaintiff. For the reasons set forth below, the Court denies without prejudice Defendant's motion to strike class allegations, grants in part Defendant's motion to dismiss the FAC with leave to amend, and vacates the Court's previous order granting Defendant's motion to dismiss the complaint.

### Background

Plaintiff instituted this class action against Cox, an internet service provider in California, 21 other states, and the District of Columbia. (FAC ¶ 6.) Plaintiff, after seeing and reading Cox's advertisements regrading faster internet speeds, upgraded her internet service to Cox's High Speed Internet Premier with PowerBoost Package in order to obtain faster uploads and downloads to and from the internet. (Id. ¶ 30.) Plaintiff alleges that Cox advertises "blazing fast" internet with PowerBoost speeds up to 20 Mbps for Premier Tier and 12 Mbps for Preferred Tier customers. (Id. ¶¶ 1, 27.) She alleges Cox also advertises that with PowerBoost "you can now enjoy doubled upload speeds and up to 33% faster downloads," and that Cox provides "Racing Speeds: 2.3 X Faster than 3 Mbps DLS." (Id. ¶ 27.) Plaintiff alleges that Cox's terms of service promise customers specific speed tiers that vary in price based on the speed tier purchased. (Id. ¶ 1.) Plaintiff alleges that Cox beaches its promise to provide high speed internet access and specific speeds by selectively targeting and severely impeding the use of certain peer-to-peer ("P2P") file sharing internet applications ("Blocked Applications") by transmitting unauthorized hidden messages known as reset packets to customers' computers who use such applications, which slows such applications to a mere crawl or stops them altogether. (Id. ¶¶ 1–3.) Plaintiff alleges that she uses the Blocked Applications to download and upload large files such as music and video files and that she has experienced severe limitations on the speed of service when she uses such applications. (Id. ¶ 5.) Plaintiff alleges that Cox impairs use of

Blocked Applications irrespective of band-with consumption or network congestion. (*Id.* ¶ 1.) Plaintiff alleges that she has performed her obligations under the terms of the agreements by paying her monthly charges and by not engaging in activities prohibited under the agreements. (*Id.* ¶ 36.)

As a result of this alleged conduct by Cox, Plaintiff alleges causes of action for: (1) breach of contract; (2) breach of the implied covenant of good faith and fair dealing; (3) violation of the Consumer Legal Remedies Act ("CLRA"), California Civil Code § 1750 et seq.; (4) violation of California Business and Professions Code § 17200 et seq., based on fraudulent acts and practices; (5) violation of California Business and Professions Code § 17500 et seq., based on false and misleading advertising; (6) violation of California Business and Professions Code § 17200 et seq., based on unlawful acts; and (7) violation of California Business and Professions Code § 17200 et seq., based on unfair acts and practices.

Defendant Cox moves the Court to strike Plaintiff's class allegations and to dismiss the FAC based on lack of subject matter jurisdiction, as the Court's basis for subject matter jurisdiction rests on the Class Action Fairness Act of 2005. (Doc. No. 42.) Defendant also moves to dismiss the FAC for failure to state a claim for relief and for failing to plead fraud with specificity. (*Id.*) In support of its motions, Cox relies on the terms and conditions of the subscriber agreement referenced by Plaintiff in the FAC. In order for a subscriber to purchase Cox's service, the subscriber is required to check two "Customer Authorization" boxes confirming that he or she has read and accepted the Cox Terms and Conditions of Service, Subscriber

Agreement ("SA"), and Acceptable Use Policy ("AUP"). (FAC ¶ 31; Doc. No. 41 Exs. C–E.) Cox contends that it is permitted to manage the network under the terms of the subscriber agreement and never promised in its advertising unlimited uploading and downloading ability at the maximum speeds offered. The SA sets forth the terms and conditions of the internet service and as part of the contract the subscriber agrees that Cox provides "Network Management" for the "greatest benefit of the greatest number of subscribers including, specifically, traffic prioritization, and protocol filtering." (FAC ¶ 33; Doc. No. 41, Ex. D ¶¶ 6, 15.) Cox asserts that the contractual provisions directly contradict Plaintiff's allegations, and therefore Plaintiff's claims for breach of contract and inadequate disclosure should be dismissed.

### Discussion

### I. Motion to Strike Class Allegations

Cox moves to strike Plaintiff's class allegations on the basis that the determination of who would have claims like Plaintiff's would require subscriber-by-subscriber inquiries about reliance, expectations, internet usage, the reasons for and severity of any service interruptions or slowdowns, and the fact of damage. (Doc. No. 42 at 2.) Plaintiff opposes Cox's motion to strike class allegations on the basis that it is premature prior to commencement of discovery and that the class is ascertainable.

Pursuant to Rule 12(f), a party may move to strike from a pleading "any insufficient defense or any redundant, immaterial, or impertinent and scandalous matter." Fed.R.Civ.P. 12(f). Class allegations may be stricken at the pleading stage. *Kamm v. California City Dev. Co.,* 509 F.2d 205, 212 (9th Cir.1975). However, motions to strike class allegations are

generally disfavored because "a motion for class certification is a more appropriate vehicle." *Thorpe v. Abbott Lab., Inc.,* 534 F.Supp.2d 1120, 1125 (N.D.Cal.2008). As other courts have noted, "the granting of motions to dismiss class allegations before discovery has commenced is rare." *Id.; In Re Wal–Mart Stores, Inc.,* 505 F.Supp.2d 609, 615 (N.D.Cal.2007).

■ The Court denies Cox's motion to strike class allegations without prejudice. The Court is granting Plaintiff leave to file a second amended complaint, Defendant has not yet answered the second amended complaint, discovery has not yet commenced, and no motion for class certification has been filed. A fully briefed record and at least some discovery are necessary for the Court to make a fully informed decision, as class determination "generally involves considerations that are enmeshed in the factual and legal issues comprising the plaintiff's cause of action." *General Telephone Co. of Southwest v. Falcon,* 457 U.S. 147, 160, 102 S.Ct. 2364, 72 L.Ed.2d 740 (1982) (internal quotation omitted). The Court concludes that it cannot determine from the face of the pleadings that a class is not certifiable as a matter of law, as there are factual and legal issues yet to be determined. The issues raised by Defendant are better suited for a determination at the class certification stage.

Cox also moves to strike allegations in the FAC against Cox Enterprises, Inc. on the grounds that the Court granted a joint motion to dismiss Cox Enterprises, Inc. from the original complaint on December 4, 2008. (*See* Doc. No. 12.) The Court declines at this time to strike allegations against Cox Enterprises, Inc. from the FAC, as the Court dismissed Cox Enterprises, Inc. without prejudice and granted Plaintiff leave to amend its complaint. (*See id.;* Doc. No. 34.)

## II. Motion to Dismiss pursuant to 12(b)(6)

Cox moves to dismiss Plaintiff's FAC for failure to state a claim upon which relief may be granted under Federal Rule of Civil Procedure 12(b)(6). (Doc. No. 42 at 17.) A motion to dismiss a complaint under Federal Rule of Civil Procedure 12(b)(6) tests the legal sufficiency of the claims asserted in the complaint. *Navarro v. Block,* 250 F.3d 729, 731 (9th Cir.2001). A complaint generally must satisfy only the minimal notice pleading requirements of Federal Rule of Civil Procedure 8(a)(2) to evade dismissal under a Rule 12(b)(6) motion. *Porter v. Jones,* 319 F.3d 483, 494 (9th Cir.2003). Rule 8(a)(2) requires that a pleading stating a claim for relief contain "a short and plain statement of the claim showing that the pleader is entitled to relief." The function of this pleading requirement is to "give the defendant fair notice of what the ... claim is and the grounds upon which it rests." *Conley v. Gibson,* 355 U.S. 41, 47, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957). "While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the 'grounds' of his 'entitlement to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atlantic Corp. v. Twombly,* 550 U.S. 544, 127 S.Ct. 1955, 1964–65, 167 L.Ed.2d 929 (2007). "Factual allegations must be enough to raise a right to relief above the speculative level." *Id.* at 1965 (citing 5 C. Wright & A. Miller, Federal Practice and Procedure § 1216, pp. 235–36 (3d ed.2004)). "All allegations of material fact are taken as true and construed in the light most favorable to plaintiff. However, conclusory allegations of law and unwarranted inferences are insufficient to defeat

a motion to dismiss for failure to state a claim." *Epstein v. Wash. Energy Co.*, 83 F.3d 1136, 1140 (9th Cir.1996); *see also Twombly,* 127 S.Ct. at 1964–65.

"Generally, a district court may not consider any material beyond the pleadings in ruling on a Rule 12(b)(6) motion." *Hal Roach Studios, Inc. v. Richard Feiner & Co.*, 896 F.2d 1542, 1555 n. 19 (9th Cir. 1990). The court may, however, consider the contents of documents specifically referred to and incorporated into the complaint. *Branch v. Tunnell,* 14 F.3d 449, 454 (9th Cir.1994). In evaluating a motion to dismiss, a court may consider evidence on which the complaint "necessarily relies" as long as: (1) the complaint refers to the document; (2) the document is central to the plaintiff's claim; and (3) no party questions the authenticity of the copy attached to the 12(b)(6) motion. *Marder v. Lopez,* 450 F.3d 445, 448 (9th Cir.2006). In addition, a court ruling on a motion to dismiss may consider facts that are subject to judicial notice under Federal Rule of Evidence 201. A district court may take judicial notice of matters of public record, but cannot use this rule to take judicial notice of a fact that is subject to "reasonable dispute" simply because it is contained within a pleading that has been filed as a public record. *Lee v. City of Los Angeles,* 250 F.3d 668, 689–90 (9th Cir.2001).

In this case, the complaint specifically refers to the SA, AUP, Terms and Conditions, and Limitations of Service that a subscriber agrees to accept with the purchase of internet service. (FAC ¶¶ 31–33.) These documents are central to Plaintiff's claim and no party questions the authenticity of the copy of the documents attached to Cox's 12(b)(6) motion. (Doc. No. 41, Exs. C–F.) Accordingly, the Court may consider them in ruling on Defendant's

motion to dismiss. Defendant also requests the Court take judicial notice of the FAC and a red-line edit comparing Plaintiff's original complaint. The Court takes judicial notice of these documents, as a Court make take judicial notice of court filings. *See Reyn's Pasta Bella, LLC v. Visa USA, Inc.,* 442 F.3d 741, 746 (9th Cir.2006). Plaintiff requests the Court take judicial notice of the FCC's opinion and order concerning Comcast, released August 20, 2008 and a Policy Statement adopted by the FCC on August 5, 2005. (Doc. No. 47.) Because these are matters of public record, the Court takes judicial notice of the documents.

## A. Breach of Contract

Plaintiff's first cause of action alleges Cox breached a written or implied contract. (FAC ¶¶ 42–45.) In a breach of contract claim under California law, a plaintiff must allege (1) a contract, (2) plaintiff's performance, (3) defendant's breach, and (4) damages. *McDonald v. John P. Scripps Newspaper,* 210 Cal. App.3d 100, 257 Cal.Rptr. 473, 475 (Cal.Ct. App.1989). Under the terms of the SA, however, the agreement "shall be exclusively governed by, and construed in accordance with, the laws of the State of Georgia." (Doc. No. 41, Ex. D ¶ 19.) Under Georgia law, " '[t]he elements of a right to recover for a breach of contract are the breach and the resultant damages to the party who has the right to complain about the contract being broken.' " *Budget Rent–a–Car of Atlanta, Inc. v. Webb,* 220 Ga.App. 278, 280, 469 S.E.2d 712 (1996) (*quoting Graham Bros. Constr. Co. v. C.W. Matthews Contracting Co.,* 159 Ga.App. 546, 550, 284 S.E.2d 282 (1981)). A contract of adhesion is strictly construed against the drafter and as reasonably understood by the consumer. *See Hosp.*

*Auth. of Houston County v. Bohannon,* 272 Ga.App. 96, 98–99, 611 S.E.2d 663 (2005) (citations omitted); *Graham v. Scissor–Tail, Inc.,* 28 Cal.3d 807, 820, 171 Cal. Rptr. 604, 623 P.2d 165 (1981).

■ Plaintiff alleges that she entered into a written or implied contract with Defendants to pay monthly fees in order to obtain the service, which Defendant promises will provide high speed access to the internet for uploads and downloads at specified speeds, that she performed her obligations under the contract by paying monthly fees and by not engaging in any activities prohibited by the Agreement, that Defendant breached the contract by restricting Plaintiff's access to, and use of, the service at speeds promised in the Agreement, and that she was damaged by the breach because she did not receive the service at the speeds for which she paid. (FAC ¶¶ 43–45.) Plaintiff further alleges that the Terms and Conditions, SA, and AUP are required to be accepted by a subscriber in order to purchase the service, the terms of the service explicitly promise specific internet access speeds, and Defendant charges more for faster speeds. (*Id.* ¶¶ 31–32.) Plaintiff alleges that the "Limitations of Service" state that the Preferred with PowerBoost Package has a maximum downstream speed of 5 to 9 megabits per second and maximum upstream speed of 512 kilobits to 2 megabits per second and that the Premier with PowerBoost Package has a maximum downstream speed of 10 to 20 megabits per second and maximum upstream speed of 1 to 2 megabits per second. (*Id.* ¶ 32.) Plaintiff alleges that she reasonably believed, based upon the fact that each progressive tier of the service costs more, that each tier of the service will attain a minimum speed that is at least as fast as the maximum speed promised for the tier below. (*Id.* ¶ 32.)

The SA also contains a provision that Cox has "the right to manage its network for the greatest benefit of the greatest number of subscribers including, without limitation, the following: rate limiting, rejection or removal of 'spam' or otherwise unsolicited bulk email, anti-virus mechanisms, traffic prioritization, and protocol filtering." (*Id.* ¶ 33.) Plaintiff alleges that none of the posted policies or terms of service or use state that Defendant can or will impede, limit, discontinue, block or otherwise impair or treat differently the Blocked Applications, and that Defendant impairs and blocks the Blocked Applications in an arbitrary and discriminatory manner and irrespective of the bandwidth consumed by a user of the Blocked Applications. (*Id.* ¶ 33.) Plaintiff also alleges that by specifically enumerating the circumstances in which Defendant reserves the right to manage the network, Defendant implicitly promises Plaintiff that they will have otherwise unlimited use of the service at the promised speeds, including with respect to the Blocked Applications. (*Id.* ¶ 34.)

The Court concludes that Plaintiff fails to sufficiently plead a breach of contract, as she points to no term of the contract that was breached by Cox. Plaintiff alleges that Cox promised specific speeds of internet access, but as Plaintiff alleges in her complaint and as the Limitations of Service state, the speeds are maximum speeds attainable by each tier of service, not a promise that at all times a customer's service will deliver those maximums. The Limitations of Service also state, "the limitations set forth herein are approximate and may vary from time to time." (Doc. No. 42, Ex. F.) Contrary to Plaintiff's as-

sertions, Cox never promised a minimum speed for each tier of service and such an implied term cannot be read into a fully-integrated contract. *See Collins v. Abel Holding Co.,* 89 Ga.App. 337, 341–42, 79 S.E.2d 436 (1953); (Doc. No. 42, Ex. D ¶ 20 ("This Agreement constitutes the entire agreement and understanding between the parties with respect to its subject matter and supersedes and replaces any and all prior written or oral agreements.")). Furthermore, Plaintiff does not allege that she never obtained the specified maximums, only that occasionally Defendant sent reset packets that disrupted certain P2P applications while Plaintiff was downloading or uploading large files. The contract specifically states that a user, "must ensure that your activities do not improperly restrict, inhibit, or degrade any other user's use of the Service, nor represent (in Cox's sole judgment) an unusually great burden on the network itself," and Cox specifically reserves the right to manage its network. (*Id.* Ex. C ¶ 13; Ex. D ¶ 15.) Cox also does not warrant "the service will be uninterrupted or error free ... or any files sent by or to you will be transmitted in uncorrupted form or within a reasonable period of time." (*Id.* ¶ 13.) Plaintiff subscribed to a service and even construing the contract through the lens of the reasonable consumer as Plaintiff urges, subscribers plainly agreed to use limitations and Cox's discretion to manage its network, including traffic prioritization and decisions concerning overburdening of the network. The agreement makes no promises regarding minimum speeds and never promises that all applications will function at certain speeds at all times. Accordingly, the Court dismisses with leave to amend Plaintiff's breach of contract claim, as she fails to plead a breach of any contract term under Georgia or California law.

## B. Implied Covenant of Good Faith and Fair Dealing

■ Plaintiff's second cause of action is for a breach of the covenant of good faith and fair dealing. (FAC ¶¶ 46–54.) California recognizes that every contract contains an implied covenant of good faith and fair dealing, " 'impos[ing] upon each contracting party the duty to refrain from doing anything which would render performance of the contract impossible by any act of his own, but also the duty to do everything that the contract presupposes that he will do to accomplish its purpose.' " 1 Witkin, Summary of California Law, Contracts § 798 (10th ed.2005). In order to state a claim for relief on an implied covenant theory, there must first be a contractual relationship between the parties. *Id.* § 800 (citation omitted). "The essence of the good faith covenant is objectively reasonable conduct." *Id.* § 801. A breach of the implied covenant of good faith and fair dealing requires something more than a breach of the contractual duty itself. *Careau & Co. v. Security Pacific Business Credit, Inc.,* 222 Cal.App.3d 1371, 1394, 272 Cal.Rptr. 387 (1990) (citations omitted). This "implies unfair dealing rather than mistaken judgment." *Id.*

■ According to the Georgia Supreme Court, "[e]very contract imposes upon each party a duty of good faith and fair dealing in its performance and enforcement." *Brack v. Brownlee,* 246 Ga. 818, 820, 273 S.E.2d 390 (1980). Under Georgia law, where a party cannot maintain a cause of action for breach of contract, that party cannot maintain an independent cause of action for a breach of good faith because the implied covenant of good faith and fair dealing "is not an independent contract term." *Stuart Enter. Intern., Inc. v. Peykan, Inc.,* 252 Ga.App. 231, 234, 555 S.E.2d 881 (2001) (quotation omitted).

The Court concludes that Plaintiff fails to plead a cause of action for a breach of the implied covenant of good faith and fair dealing. Plaintiff's claim for breach of contract fails, and thus under either California or Georgia law her claim for breach of the implied covenant must also fail. Accordingly, the Court dismisses with leave to amend Plaintiff's claim for breach of contract.

## C. Plaintiff's False Advertising Claims

Plaintiff's third through seventh causes of action are for violations of various California consumer protection statutes, including the Consumer Legal Remedies Act, provisions of California's Unfair Competition Law, and California's False Advertising Law. The Court reserves judgment at this time on Cox's motion to dismiss these claims, as the Court grants Plaintiff leave to amend her complaint based on the dismissal of her contract-based claims. Additionally, the Court vacates its previous Order Granting Defendant's Motion to Dismiss Complaint (Doc. No. 34) in light of the Supreme Court's May 18 decision in *Ashcroft v. Iqbal,* —— U.S. ——, 129 S.Ct. 1937, 173 L.Ed.2d 868 (2009).

### *Conclusion*

For the reasons set forth above, the Court DENIES WITHOUT PREJUDICE Defendant Cox's motion to strike the class allegations, GRANTS IN PART Defendant Cox's motion to dismiss the FAC, and VACATES the Court's February 6, 2009 Order Granting Defendant's Motion to Dismiss (Doc. No. 34). Plaintiff may file a second amended complaint within 30 days of the date of this order.

**IT IS SO ORDERED.**