Filed 6/13/13  Global Sales & Marketing v. Don Spare Enterprises CA2/5

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION FIVE

| | |
|---|---|
| GLOBAL SALES & MARKETING, <br><br> Plaintiff and Appellant, <br><br> v. <br><br> DON SPARE ENTERPRISES, INC. et al., <br><br> Defendants and Respondents. | B238495 <br><br> (Los Angeles County <br> Super. Ct. No. LC080831) |

APPEAL from a judgment of the Superior Court of Los Angeles County, Frank J. Johnson, Judge.  Affirmed.

Lozoya & Lozoya, Frank J. Lozoya IV and Edmont T. Barrett, for Plaintiff and Appellant.

Turner, Aubert & Friedman, D. Larene Pyles and Jonathan M. Deer, for Defendant and Respondent MTM Recognition.

Law Offices of Glenn D. Hamovitz and Glenn D. Hamovitz for Defendants and Respondents Don Spare Enterprises, Inc., Don Spare, George Stone Enterprises, Inc. and George Stone.

# I. INTRODUCTION

The parties to this lawsuit were involved in an attempt to create an E-Commerce Company Store (ECS) designed to allow employees to make on-line purchases of items including those bearing the internal branding and logos of their employer. The parties hoped to market the ECS to nonparty SuperValu for use by the approximately 200,000 employees of SuperValu and its subsidiaries. SuperValu never gave final approval and none of the parties realized any profit. The present lawsuit was filed by one of the joint venturers against its former associates. The allegations are breach of contract, quantum meruit and fraud, resulting in claimed damages in excess of $5 million. The trial court denied a motion to compel discovery brought by plaintiff and granted all defendants' summary judgment motions on multiple grounds. Judgments in favor of defendants were entered and plaintiff appeals. We affirm.

# II. BACKGROUND

## A. The parties

Plaintiff/appellant Global Sales & Marketing, LLC (Global), owned and managed by Dean Ladell, provides a variety of domestic and international business services, including design and development of on-line marketing and merchandising products. Working with defendants, Global developed the proposed ECS that is the subject of this lawsuit.

Defendants Don Spare, Don Spare Enterprises, Inc. (Spare), George Stone and George Stone Enterprises, Inc. (Stone) are experienced sales representatives for a variety of products and services, including recognition programs and awards. Spare and Stone have for many years sold products and programs created by defendant Midwest Trophy Manufacturing Co., Inc. dba MTM Recognition (MTM). Spare and Stone are

independent contractors whose relationship with MTM is governed by a written agreement.

MTM is a manufacturer and provider of awards and recognition products and services. It employs over 750 people, including 15 information technology developers who have designed and maintained over 500 recognition-related websites for MTM's customers. MTM's clients include the NCAA, college bowl game entities, the Special Olympics and a number of multi-national corporations.

Nonparty Supervalu owns retail chain stores including Albertsons, Bristol Farms and Sav-on. Albertsons and Supervalu have purchased MTM's recognition awards programs through Spare and Stone since 2003.

## B.  The Product

An "e-commmerce business package" consists of all aspects of a proposed on-line project, including the actual "front-end" operational plan and web site, as well as "back-end" services such as maintenance, accounting and tax collection. An e-commerce company store, or ECS, is an internet store that sells products branded with a company logo to the company's employees. It is a different product than a recognition and awards program such as the ones purchased from MTM by SuperValu.

## C.  The First Amended Complaint

In its operative complaint Global seeks compensatory and punitive damages in excess of $5 million from defendants Spare, Stone and MTM based on breach of contract, quantum meruit and fraud.[1] Global alleges that pursuant to a November 2006 oral contract, plaintiff agreed to develop a "business package for merchandise" and a

---

[1]    Defendants were jointly named in the breach of contract (first) and quantum meruit (second) causes of action. Plaintiff separately alleged fraud and deceit against defendant Spare and Stone (third) and MTM (fourth).

"permanent web platform" which the parties hoped would be adopted by SuperValu as its on-line company store.  In return for its work Global was to receive "40% of the store sales for the life of the store," and was allegedly promised additional compensation for its services.  Global alleges that it worked steadily to comply with its contractual obligation until, on December 27, 2006, Global was falsely advised by defendants that Global's work had been accepted by SuperValu, and that Global should continue perfecting the project. Global did so, responding to requests for additions to the program by defendants Spare and Stone.  In October of 2007 a representative of defendant MTM falsely told Global the project was proceeding.  In October and November of 2007 defendants Spare and Stone falsely informed Global that SuperValu's top managers were completely committed, had named the platform  "The Pro Shop," and wanted to go full speed ahead toward a December 1, 2007 "launch" date. In November of 2007 a representative of defendant MTM supplied "base information" necessary for Global to move forward on the project.  Global relied on these false statements and continued to perfect the ECS. All defendants allegedly made misrepresentations which induced Global to provide proprietary and trade secret information without compensation.  Thereafter all defendants refused to pay, made material misrepresentations and, by means of false statements, took Global's "proprietary information and protected trade secrets."  Global alleged that all defendants acted as agents for one another, and acted in a manner deserving of an award of punitive damages.

    D.  Global's Motion To Compel Discovery of MTM's Proprietary Information

    In February 2010 the trial court denied, without prejudice, Global's motion to compel discovery of MTM's programming code and other electronic data.  The court found the information sought constituted trade secrets governed, as to discovery, by Civil Code section 2019.210.  The court ruled, in effect, that Global had not complied with that statute.  We need not reach this issue on appeal in light of our affirmance of the summary judgment motions.  Any claim that the discovery may have affected the trial court's summary judgment rulings has been forfeited by Global's failure to renew the motion to

4

compel prior to the summary judgment hearing. Further, our review of the entire record convinces us there was no abuse of discretion by the trial court, and that the discovery at issue could not have changed the result of the summary judgment rulings. (See *Lickter v. Lickter* (2010) 189 Cal.App.4th 712, 740.)

E.  Defendants' Motions For Summary Judgment Or Summary Adjudication

Defendants filed two similar motions for summary judgment or summary adjudication, one by Spare and Stone, the other by MTM. Both motions challenged Global's ability to prove damages as to breach of contract and fraud, and argued any alleged damages were speculative. Both motions contended Global could not prove one or more elements of its quantum meruit claim, i.e. that Global expected to be paid by defendants or that defendants benefitted from Global's services. Spare and Stone asserted the breach of contract and quantum meruit claims failed due to the absence of a written agreement as required by the Wholesale Sales Representatives Contractual Relations Act of 1990 (the CRA) (Civ. Code § 1738.10 et seq). MTM argued the absence of a writing was fatal to the alleged breach of contract and the alleged fraud. Spare and Stone contended the alleged oral agreement did not include a requirement that defendants pay monies to Global. MTM contended Global's breach of contract and fraud claims against MTM failed because Global could not prove a legally enforceable agreement.

F.  The Trial Court's Rulings

The trial court's separate written rulings found each defendant had carried its initial burden, and that plaintiff Global had failed to establish triable issues, in that: (1) Global cannot prove damages as to any cause of action; (2) the "purported damages . . . are too speculative as a matter of law and without foundation"; (3) Global cannot prove one or more elements of quantum meruit against either defendant, and Global waived such a claim as to the Spare and Stone defendants; (4) the breach of contract and quantum meruit claims fail due to the absence of a written agreement; (5) the alleged oral

5

agreement did not obligate Spare and Stone to pay monies to Global; (6) there was no enforceable agreement or promise as between Global and MTM; and (7) Global cannot prove damages against MTM relating to any issue of trade secrets. These conclusions were supported in the trial court's written decisions by a number evidentiary rulings and factual findings, which shall be discussed as needed below.

## III. STANDARD OF REVIEW

Our review of the trial court's rulings is governed by well established principles. "'"A trial court properly grants a motion for summary judgment only if no issues of triable fact appear and the moving party is entitled to judgment as a matter of law. (Code Civ. Proc., § 437c, subd. (c); see also *id.,* § 437c, subd. (f) [summary adjudication of issues].) The moving party bears the burden of showing the court that the plaintiff 'has not established, and cannot reasonably expect to establish,'" the elements of his or her cause of action. (*Miller v. Department of Corrections* (2005) 36 Cal.4th 446, 460 [30 Cal.Rptr.3d 797, 115 P.3d 77].)' (*Wilson v. 21st Century Ins. Co*. (2007) 42 Cal.4th 713, 720 [68 Cal.Rptr.3d 746, 171 P.3d 1082].) We review the trial court's decision de novo, liberally construing the evidence in support of the party opposing summary judgment and resolving doubts concerning the evidence in favor of that party. (*Yanowitz v. L'Oreal USA, Inc*. (2005) 36 Cal.4th 1028, 1037 [32 Cal.Rptr.3d 436, 116 P.3d 1123].)" (*State of California v. Allstate Ins. Co*. (2009) 45 Cal.4th 1008, 1017-1018.) "[W]e must construe plaintiff's evidence liberally and accept all reasonable inferences which could be drawn by a trier of fact in favor of plaintiff." (*Binder v. Aetna Life Ins. Co.* (1999) 75 Cal.App.4th 832, 854.)

"We review the trial court's decision [on a summary judgment motion] de novo, considering all of the evidence the parties offered in connection with the motion (except that which the court properly excluded) and the uncontradicted inferences the evidence reasonably supports. (*Artiglio v. Corning, Inc*. (1998) 18 Cal.4th 604, 612 [76 Cal.Rptr.2d 479, 957 P.2d 1313].) In the trial court, once a moving defendant has 'shown that one or more elements of the cause of action, even if not separately pleaded, cannot be

6

established,' the burden shifts to the plaintiff to show the existence of a triable issue; to meet that burden, the plaintiff 'may not rely upon the mere allegations or denials of its pleadings . . . but, instead, shall set forth the specific facts showing that a triable issue of material fact exists as to that cause of action . . . .' (Code Civ. Proc., § 437c, subd. (o)(2); see *Aguilar v. Atlantic Richfield Co*. (2001) 25 Cal.4th 826, 854-855 [107 Cal.Rptr.2d 841, 24 P.3d 493] (*Aguilar*).)" (*Merrill v. Navegar, Inc*. (2001) 26 Cal.4th 465, 476-477.)

## IV.  DISCUSSION

### A.  Plaintiff Global Concedes The Correctness Of Some Of The Trial Court's Rulings By Not Challenging Them On Appeal; The Concessions Are Dispositive As To Breach Of Contract And Quantum Meruit

In its Opening Brief, appellant Global cites to the transcript of the argument on the motions in support of its claim that the trial court ruled in Global's *favor* on defendants' Contractual Relations Act and waiver defenses.  Not only does this conclusion ignore the trial court's statement at the hearing that its remarks reflected its "tentative ruling," it is directly contrary to the court's eventual written rulings, which were drafted by defendants' attorneys at the direction of the trial court.  Global's counsel was given notice of the proposed written rulings and failed to register any objection, even after being served a second time, with a notice of non-receipt of response to the proposed orders.[2]

A trial court's tentative ruling has no relevance on appeal insofar as it differs from a final ruling. (*Wilshire Ins. Co. v. Tuff Boy Holding, Inc.* (2001) 86 Cal.App.4th 627, 638, fn. 9; *FLIR Systems, Inc. v. Parrish* (2009) 174 Cal.App.4th 1270, 1284; accord *Shaw v. County of Santa Cruz* (2008) 170 Cal.App.4th 229, 268 ["[A] court's oral

---

[2]  Global further errs in claiming defendants moved for summary judgment only on the limited issue of damages. As noted earlier in this opinion, defendants' motions raised several grounds addressing each of the causes of action.

comments may be valuable in illustrating the trial judge's theory, but they may never be used to impeach the order or judgment on appeal."].) Further, having failed to object to the content of the proposed written rulings below, Global is deemed to have approved it. (Cal. Rules of Court, rule 3.1312(a).) Here the trial court's final written rulings state that each defendant's motion was "granted in all particulars." Each ruling then enumerates the court's legal conclusions in explicit detail. Global has ignored them in this appellate proceeding at its peril. (*Paulus v. Bob Lynch Ford, Inc.* (2006) 139 Cal.App.4th 659, 685; *Tisher v. California Horse Racing Bd.* (1991) 231 Cal.App.3d 349, 361.)

As to defendants Spare and Stone, following its two rulings that damages could not be proved, the trial court expressly concluded: "(3) Plaintiff [Global] cannot prove one or more elements of quantum meruit against Defendants and Defendants have established a complete defense of waiver, (4) Defendants have established their affirmative defense that the contract must be in writing as a complete defense to Plaintiff's first and second causes of action, and (5) Defendants do not owe a contractual duty to Plaintiff to pay any monies to Plaintiff under the alleged oral agreement."

As to defendant MTM, following its two rulings that damages could not be proved, the trial court expressly concluded: "(3) Plaintiff [Global] cannot prove one or more elements of quantum meruit against Defendant MTM, (4) Plaintiff cannot prove a sufficiently certain and enforceable agreement or promise as to Defendant MTM, (5) Plaintiff cannot prove damages against Defendant MTM relating to any issue of trade secrets, and (6) Defendant has established its affirmative defense to the First and Second Causes of Action that the contract must be in writing."

Appellant Global's Opening Brief has challenged only the trial court's rulings as to damages. Thus, Global has conceded the correctness of the other above-stated rulings, which independently disposed of the breach of contract and quantum meruit claims against all defendants. The correctness of the trial court's damages rulings is therefore at issue only as to the fraud causes of action, which we address de novo in the remainder of this opinion.

8

## B. There Is No Triable Issue Of Fact As To Damages

### 1. Plaintiff Global Has Forfeited Challenges To The Trial Court's Evidentiary And Burden Shifting Rulings

The trial court sustained numerous defense objections to Global's proffered evidence in support of its opposition to the motions. Global did not contest these rulings during the hearing below, nor did it make any objections to defendants' evidence as it was presented to the trial court. On appeal Global "takes exception" to exclusion of its chief officers' opinions as to lost profits and sales damages by means of a footnote in its Opening Brief. In the footnote Global cites four cases, three of which are accompanied by no discussion or analysis. As to the fourth case, *Coogan Finance Corp. v. Beatcher* (1932) 120 Cal.App. 278, Global states that it "held that such testimony was proper and therefore [the instant trial court's] sustaining of the objection was improper and in error."

Global's failure to properly contest the trial court's rulings constitutes a forfeiture. The California Rules of Court require that a brief "[s]tate each point under a separate heading or subheading summarizing the point . . . ." (Rule 8.204(a)(1)(B).) "This is not a mere technical requirement; it is 'designed to lighten the labors of the appellate tribunals by requiring the litigants to present their cause systematically and so arranged that those upon whom the duty devolves of ascertaining the rule of law to apply may be advised, as they read, of the exact question under consideration, instead of being compelled to extricate it from the mass.' [Citations.]" (*In re S.C.* (2006) 138 Cal.App.4th 396, 408.) "The failure to head an argument as required by California Rules of Court, rule [8.204(a)(1)(B)] constitutes a waiver. [Citations.]" (*Opdyk v. California Horse Racing Bd.* (1995) 34 Cal.App.4th 1826, 1830, fn. 4.)

Structure aside, Global's footnoted challenge to the trial court's evidentiary rulings refers to no specific objection and fails to analyze or cite pertinent authority as to any ground asserted by defendants for their objections. Such cursory briefing, again, constitutes a forfeiture. (*Badie v. Bank of America* (1998) 67 Cal.App.4th 779, 784-785; accord *Kim v. Sumitomo Bank* (1993) 17 Cal.App.4th 974, 979 [appellant must cite valid

9

authority and explain how it applies to the case at hand].)

Were we to reach the merits of the trial court's evidentiary rulings, we would arrive at the same results. (*Walker v. Contrywide Home Loans, Inc.* (2002) 98 Cal.App.4th 1158, 1169.) The cases cited by Global are distinguishable for the reasons argued by defendants. The Ladell expert opinion lacks foundation in that it relies on dissimilar businesses, calculations lacking factual basis and an unexplained methodology referred to as a "standard business analysis." (See *Sargon Enterprises, Inc. v. University of Southern California* (2012) 55 Cal.4th 747, 775-781; *Parlour Enterprises, Inc. v. Kirin Group, Inc.* (2007) 152 Cal.App.4th 281, 288-291 (*Parlour*).) Similarly, the Wilner opinion testimony regarding damages lacks foundation, and appears to be hearsay based on an out-of-court conversation between Wilner and an uninvolved person.

Accordingly, we will summarize the facts before the trial court without reference to the properly excluded evidence. (*Guz v. Bechtel Nat'l, Inc.* (2000) *24* Cal.4th 317, 334.)

Similarly Global does not challenge the trial court's finding that defendants' evidentiary showing shifted the burden to Global, requiring Global to demonstrate triable issues of fact as to each cause of action. Accordingly, the ultimate issue below was whether Global carried its burden as to any cause of action. The issue on appeal is the same, although limited to the fraud claims for the reasons discussed above.

## 2. De Novo Findings As To Material Facts

As noted, we are concerned with only that portion of the parties' evidentiary showings that bear directly on whether Global suffered damages wrongfully caused by defendants' allegedly fraudulent behavior. We shall discuss and resolve the competing factual claims as part of our de novo review.

Initially, all defendants relied on the testimony of plaintiff Global's owner and manager, Dean Ladell (Ladell), as well as the declaration of SuperValu's Director of Compensation and Recognition, Melanie O'Neill-German (O'Neill-German), to assert that Global understood its compensation would consist of 40 percent of the gross sales for

10

the life of the ECS.  In its Separate Statement of Disputed Material Facts, Global responded, "Admit in part, Denied in Part," asserting it was entitled to a 40 percent "profit split" and noting, nonreponsively, that the customer base of the proposed ECS would have consisted of over 200,000 employees of SuperValu and its subsidiary, Albertsons.

Defendants Spare and Stone cited to Ladell's testimony as establishing that the agreement "contained no cost reimbursement clause and there was not to be a reimbursement of expenses to either side."  Global responded, "Denied. Irrelevant," nonresponsively referencing the testimony of Ladell and Global official Michelle Wilner (Wilner) as establishing Global completed the ECS by March/April 2007, and incurred over $74,000 in costs "due to Defendants' request to perform."  Global noted those costs had not been reimbursed by defendants.

We find defendants established Global understood its potential compensation would be derived from ECS sales.

All defendants cited portions of the Ladell and O'Neill-German testimony as establishing Global "understood from the beginning of the project that if the proposed company store did not go live, then there would be no sales and no revenue – as the source of revenue was actually to be selling merchandise."  Global responded, "Denied. Irrelevant," asserting Ladell had testified "plaintiff had to build a business package and permanent web platform in order to generate revenue."  Global cited Ladell and others as establishing Global had completed the ECS and turned it over to defendants, who "took the web platform project from the plaintiff by [MTM's] wrongful conduct and damaged it so that Spare, Stone and MTM requested that Supervalu not publish it."

We find Global's assertions largely unsupported by its cited evidence and largely nonresponsive to defendant's asserted fact in any event.  We find defendants established Global understood it would realize no revenue if the ECS never went live.

All defendants next cited primarily to the O'Neill-German and Ladell evidence as establishing Global knew the ECS could not go live without the approval of SuperValu, which put the project on indefinite hold in the Spring of 2008, and never approved the

11

launch of the ECS. The ECS "has never become finalized and operational"; it never went live and never generated sales. The ECS could not have gone live without an agreement between SuperValu and the provider on the terms of SuperValu's participation; no such agreement occurred.

Global denied virtually all of these assertions.[3] Global noted that after SuperValu received Global's completed work, SuperValu's "point person," Jodi Salsman, complimented the ECS and, in early 2007, forwarded suggestions from O'Neill-German through Spare to Global. Thereafter, defendants "damaged" Global's work and Spare asked O'Neill-German to postpone the ECS. Global asserted "the website was finalized by Global" and could have been activated by the flip of a switch, according to an employee of MTM. Global cited evidence of potential lost profits damages that was later stricken by the trial court. Global repeated its assertion it had incurred over $74,000 in out-of-pocket costs on the project. Global claimed the evidence established that after being served with Global's complaint in the present case, just days before the April 15, 2008 "go live" date, defendants Spare and Stone urged SuperValu not to launch the ECS. Global asserted defendants' action was "*apparently based on the advise* [sic] *of [defendants'] attorney!!!*" Global also claimed "Defendant [MTM] and defendant's counsel met with SUPERVALU and through their wrongful conduct SUPERVALU postponed the site at Defendants' request."

Having examined the evidence cited by the parties in support of the asserted facts summarized in the previous two paragraphs, we find defendants established: (1) Global knew from the start SuperValu had the final say on launching the project; (2) SuperValu never gave its approval; (3) the ECS never became operational; and (4) the ECS never generated any sales revenue. We find no evidence establishing or supporting a reasonable inference that defendants or defense counsel urged SuperValu not to launch the ECS as a result of this lawsuit. Further, the evidence contradicts Global's claim that

---

[3]     Global admitted in part and denied in part defendants' claim the evidence established Global "always understood SuperValu had to approve the proposed [ECS] site going live before any sales would be made."

12

the lawsuit was discussed days before an April 15, 2008 launch date; the evidence indicates SuperValu was informed of the lawsuit at a meeting on April 24, 2008. We also find Global misstated the evidence in claiming MTM employee Starling testified the ECS could have been launched by the "flip of a switch."

All defendants asserted they played no role in SuperValu's decision to put the ECS project on hold, and had no control over the ultimate decision by SuperValu not to approve launching the ECS, citing the testimony to that effect by O'Neill-German. Global denied those assertions, repeating its contentions that it had turned over an operational website, that defendants and their counsel had wrongfully sabotaged the launch, and that Global lost profits and had unreimbursed costs .

We find defendants established SuperValu made an independent decision not to launch the ECS.

### 3. Global's Faulty Briefing As To The Damage Issue Merits Summary Rejection

Global's briefing on the issue of damages consists of citations to evidence stricken by the trial court, along with strings of references to various parts of the record, including its own complaint, without explanation or meaningful analysis. As noted by defendants, Global's factual summary consists largely of argument, one-sided claims taken out of context, and citations to portions of the record which are not supportive of Global's position. Much of the brief is written as if this court should presume trial court error. Global has thus failed to comply with the rules of appellate procedure.

Even where we engage in a de novo review, we do not presume *error* by the trial court. "To demonstrate error, appellant must present meaningful legal analysis supported by citations to authority and citations to facts in the record that support the claim of error. [Citations.]" (*In re S.C.*, *supra*, 138 Cal.App.4th at p. 408.) "When an issue is unsupported by pertinent or cognizable legal argument it may be deemed abandoned and discussion by the reviewing court is unnecessary. [Citations.]" (*Landry v. Berryessa Union School Dist.* (1995) 39 Cal.App.4th 691, 699-700; see also *Gunn v. Mariners Church, Inc.* (2008) 167 Cal.App.4th 206, 217-218 ["'an appellant must present a factual

13

analysis and legal authority on each point made or the argument may be deemed waived'"].)  Moreover, an appellant's "burden to provide a fair summary of the evidence 'grows with the complexity of the record.  [Citation.]'  [Citation.]" *Boeken v. Philip Morris, Inc*. (2005) 127 Cal.App.4th 1640, 1658.)  "'The appellate court is not required to search the record on its own seeking error.'  [Citation.]" (*Nwosu v. Uba* (2004) 122 Cal.App.4th 1229, 1246.)

For these reasons, we summarily reject Global's claims that there are triable issues as to damages.

 4.  On The merits, The Trial Court Correctly Ruled That Global Cannot Prove Damages

Even if we overlook briefing issues and address damages on the merits and de novo, we agree with the trial court.  As already noted, Global has not challenged the trial court finding that the burden shifted to Global to demonstrate a triable issue as to damages.  Given the trial court' s evidentiary rulings striking the heart from Global's damage evidence, Global has failed to carry that burden.

The court sustained objections to the testimony of Global's principal officers, Ladell and Wilner, concerning lost profits.  It also concluded that, since the ECS project "never launched," lost profit damages were speculative at best.  It found that an email authored by Mr. Ladell had waived cost reimbursement.  The trial court found no agreement between Global and MTM, and noted Mr. Ladell's admission that Global's work had been completed before he was introduced to MTM.  The court also credited the unrebutted declarations of MTM's employees that MTM never used any of Global's work.

We agree with these findings, which undercut *Global's* reliance on the cases it cites. Global cites *Zavala v. Arce* (1997) 58 Cal.App.4th 915, 926 for the proposition that substantial evidence of damages creates a triable issue of fact.  The cited page merely recites the applicable legal standards, including liberal construction of evidence submitted by a party opposing summary judgment.  *Zavala* does not involve a damage issue like the one at hand. Global cites *Hulett v. Farmers Ins. Exchange* (1992) 10

Cal.App.4th 1051, 1059 in support of its claim that its damage evidence was sufficient. The cited page sheds no light on the issues before us, and Global fails to explain how *Hulett*'s reversal of a summary judgment in favor of an insurer in a bad faith action affects the damage evidence assessment in the present case. *Global* cites *Harm v. Frasher* (1960) 181 Cal.App.2d 405 and *Nystrom v. First Nat. Bank* (1978) 81 Cal.App.3d 759 for the principle that defendants had a duty to cooperate with Global in accomplishing the purposes of the contract. True enough, but neither the principle nor the cited cases address the issue of the sufficiency of damage evidence in the summary judgment context.

More to the point is *GHK Associates v. Mayer Group* (1990) 224 Cal.App.3d 856, 873, cited by Global for the proposition that when a defendant's wrongful acts make damages difficult to calculate, less precision is required in the damage calculation. Although the general principle argued by Global may be correct, the case is distinguishable. In *GHK*, a post-judgment appeal applying a presumption in favor of the trial court's ruling, the victimized plaintiff's damages were computed as a portion of the actual profits from the project at issue. (*Id.* at p. 874.) Here, of course, no such profits have been or will be realized. Further, unlike the present scenario where a third party, SuperValu, was the final decision-maker as to whether the project would launch, in *GHK* the defendants were the controlling developers and alleged wrongdoers. (*Id.* at p. 862.)

Like the trial court, we have found Global's lost profits damages inadmissible, and that nonparty SuperValu made an independent decision not to launch an on-line company store, thereby eliminating the anticipated source of compensation to all of the parties. Viewed in its best light, Global's admissible evidence fails to support recoverable damages. (*Parlour*, *supra*, 152 Cal.App.4th at p. 288; accord *McDonald v. John P. Scripps Newspaper* (1989) 210 Cal.App.3d 100, 104 ["'It is fundamental that damages which are speculative, remote, imaginary, contingent, or merely possible cannot serve as a basis for recovery.' [Citation.]"].)

## V. DISPOSITION

The judgments are affirmed. Costs on appeal are awarded to defendants.


NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS


O'NEILL, J.[*]


We concur:


TURNER, P. J.


KRIEGLER, J.

---

[*] Judge of the Ventura County Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.